THE WATER COMMISSIONERS OF JERSEY CITY v. JOHN L. BROWN.

1. A contract does not become complete and binding until reduced to writing and signed, if it appears that such was the intention of the parties; and this rule is especially applicable to a case where one of the parties were public commissioners, and the law under which they acted made it their duty to make their contracts in writing.
2. Until the contract is complete either party may withdraw his consent, and end the negotiation.

Error to the Supreme Court.

Suit was brought by Brown, the plaintiff below, against the Water Commissioners of Jersey City, to recover damages against them for an alleged refusal on their part to carry out and perform a contract entered into between the parties, for laying down and carrying across the Hackensack river, a submerged pipe, for the conducting of water to Jersey City, and providing the materials necessary for such work. On the trial, the jury rendered a verdict for the plaintiff. To some of the rulings of the judge before whom the cause was tried, exceptions were taken, and brought into this court by writ of error.

The principal exceptions insisted on, are—

1. That the judge should have non-suited the plaintiff at the circuit.

2. That he misdirected the jury.

All the facts relating to these exceptions appear in the opinion of the court.

*A. K. Brown,* for the plaintiff in error.

*A. O. Zabriskie & Son,* for the defendant.

ELMER, J.   Upon the trial of this case, before the judge at the circuit, bills of exception were taken to many of his

rulings, and we are called upon now to decide upon their correctness. The declaration, in an action on the case, claims damages alleged to have been sustained by the plaintiff, Brown, in consequence of the defendants, The Water Commissioners of Jersey City, refusing to complete and carry into effect a contract and agreement to employ him to lay down a submerged pipe across the Hackensack river, and provide the materials necessary therefor, and to enter into a written contract with him for the execution of said work, whereby he lost large profits and emoluments, which would have arisen from the performance of the same. To this declaration there was a plea of not guilty. The jury rendered a verdict for the plaintiff, and assessed his damages at eight thousand dollars.

Numerous errors were assigned, many of which were abandoned on the argument, and others it will be unnecessary to notice. The merits of the case depend mainly upon two, which will be considered together, involving, as they do, the same question. These are, that the judge refused to nonsuit the plaintiff, as requested, and that he misdirected the jury.

It was shown that, by virtue of an act of the legislature, entitled " an act to authorize the construction of works for supplying Jersey City, and places adjacent, with pure and wholesome water," approved March 25th, 1852, and several supplements thereto, certain persons are constituted " Water Commissioners of Jersey City," authorized to make contracts, and to prosecute or defend any action or process of law, or in equity, by that name; all which contracts shall be obligatory upon, and be in law considered as done by the mayor and common council of Jersey City. This act specifies, in a very particular manner, how proposals for contracts are to be advertised for and made, and requires the contracts to be made in writing, and that three copies of each contract shall be taken, one to be deposited with the comptroller of Jersey City, and one to be retained by the commissioners.

Garret S. Boice, a witness for the plaintiff, testified that he was the register of the board, and that on the eleventh day of November, 1861, their engineer, Mr. Bacot, advertised for proposals to lay the pipes, &c. The plaintiff made a written proposal December sixteenth, offering to furnish and lay the pipes required, according to a plan submitted therewith, for eighty-five thousand dollars. The proposal and plan not being accepted, the plaintiff was so informed.

April 25th, 1862, the plaintiff sent a note to the commissioners, as follows: "Some of your board and others have requested me to review my former proposition for laying a submerged pipe across the Hackensack river ; I have done so, and have concluded, after going into a close examination or calculation, to reduce my offer to the sum of seventy-five thousand dollars. If that amonnt will suit, I shall be pleased to perform the work ; if not, it will not be possible for me to do it."

April twenty-ninth the commissioners adopted the following resolution : " Resolved, That the board accept the proposal of I. L. Brown for laying a submerged pipe across the Hackensack river, on the bottom thereof, for the sum of seventy-five thousand dollars, in accordance with the plan previously submitted to this board by said Brown; and that the engineer and attorney of the board be directed to prepare a contract for said work, and submit the same for approval by the board before being executed, said contract to contain a full and ample guarantee that said work will be securely and sufficiently done, and cover a test of at least five years." A copy of this resolution was sent to the plaintiff, accompanied by a request from the engineer that he would call at the office, as he wished to confer with him in reference to the contract; and notes from the engineer were sent to him on the sixth, seventeenth, and twenty-seventh of May, requesting to see him in reference to the matter. April twenty-seventh, the contract was prepared (produced and marked A.) It is in Bacot's handwriting; it was submitted to the board May nineteenth; it was then laid on the table, and no action had

on it until the rescinding of the resolution. The minutes of the board, May nineteenth, contain the following entry: "The superintendent also presented form of contract, specification, and bond with I. L. Brown, for laying thirty-six inch main pipes across the bottom of the Hackensack river; read and laid on the table." Witness also proved paper B to be the form of agreement and specification. Between the twenty-ninth of April and the second of June, there was a change of commissioners. "I was present when Mr. Brown came and offered to execute the contract, some time after June second;" May twelfth he sent to the commissioners a letter, naming his securities, A. I. Fitch and C. G. Waterbury.

The plaintiff testified: I attended on Mr. Bacot for the purpose of agreeing on a form of contract; we agreed; I agreed to submit to them; he wanted less movable joints; he said some of them objected to so many; in my first interview with Bacot, he wanted me to make out my views, and he handed me a printed form; I assented to giving security; they wanted a guarantee for five years; after I received resolution, I had a note with a copy of the resolution, I very soon came over; the next day or two Bacot told me he wanted contract made; he asked me to draw a contract as to what my ideas should be; after he had drawn up form of contract, I offered securities; I tendered myself on twenty-first June ready to make contract; my securities, (Fitch was late) Waterbury, was with me; Wortendyke said he was not authorized to consummate contract; he did not object to securities; no disagreement between Mr. Bacot and me about manner of contract, as to specifications.

Bacot, who was called by the plaintiff, testified—I had several interviews with Brown, after he rendered his proposals, about the form of the contract; there are two forms of contract, one in handwriting of Brown, received from him, and the other in my handwriting; mine is marked A, the other was a blank form I gave to Brown; the blank form I gave him was to get his views as to time of finishing work, and to get his specifications for doing the work; form of con-

tract was to be filled up by him; A was assented to by Brown; it was the contract agreed by Brown to be presented to the board; do not know whether securities had been then submitted to the board; think they had not; contract was prepared in April or May, before the rescinding of the resolution; the note from Brown, May twelfth, (naming securities) was submitted to the board; there was no objection to Fitch, but they required time to inquire as to Waterbury.

On the second day of June, 1862, the board adopted the following resolution : " Resolved, That this board declines the bid of I. L. Brown to lay a pipe upon the bottom of the Hackensack river; and that the resolution passed by this board, April 29th, 1862, accepting said bid, be rescinded."

The plaintiff having rested his case upon the proofs thus detailed, the counsel for the defendants moved the court to non-suit him, upon the ground that the proposal of April twenty-fifth, and the resolution of April twenty-ninth, made no contract, as the acceptance by the resolution was not of the very proposal, which motion was overruled, and the cause submitted to the jury. Among other things, the judge charged that " Brown had made a written proposal to the old board, which had been accepted by them by resolution. Its character had been changed before the second of June, from an open bid to an express contract. Has the plaintiff established, by proof, the material allegations in his declaration ? There can be no doubt of that, if you believe the witnesses, and the genuineness of the papers which have been offered in evidence, and the correctness of the minutes of their proceedings." To the refusal to non-suit, and to this part of the charge the defendants excepted ; and these exceptions raise the question now to be determined by this court, viz., was there such an acceptance by the defendants of the plaintiff's proposal, as made a contract between these parties, by which they were respectively bound ?

The offer, on behalf of the plaintiff, was not to show a promise on the part of the defendants, which the law would

imply from their acts, but to show an express contract by means of proposals to do certain work and furnish the materials, on the one side, and the acceptance of these proposals on the other. That to constitute a binding contract in such cases, the proposition of one party must be met by an acceptance of the other, which corresponds with it entirely and adequately; and that until the actual completion of the bargain, either party is at liberty to withdraw his consent and put an end to the negotiation, is the well established law. 1 *Pars. on Cont.* 399–403.

For the plaintiffs it was insisted, that such an acceptance of Brown's proposals was made by the resolution adopted by the defendants on the twenty-ninth of April; and it is plain that, unless that was so, there was no act of the board, or of any authorized agent of theirs, which could have that effect. That resolution does purport to accept Brown's proposal, in accordance with the plan submitted by him; but it goes on to direct that their engineer and attorney prepare a contract for such work, and submit the same for approval to the board before being executed, and it must be taken altogether. It is plain, I think, from this express provision in the resolution, and from the testimony of Bacot and the plaintiff himself, that Brown's proposal was not accepted entirely and adequately; but that several particulars, as to the time of finishing the work, and as to the manner of doing it, and the guarantee that it would be securely and sufficiently done to cover a test of five years, remained to be settled. These matters appear to have been arranged, so far as the plaintiff was concerned, and to the satisfaction of Bacot, but Bacot was not authorized to bind the board, and did not profess to do so; on the contrary, the resolution expressly required that the contract, when adjusted to his satisfaction and the attorney's, should be submitted to them for their approval before being executed, the evident meaning of which is, that it was to be approved and executed before it was to be binding. Nor did the plaintiff execute, or offer to execute it, until after the board had dissented from it.

This resolution required a written contract to be drawn and executed, as it was made the duty of the board, by the law under which they were acting, to do. Whether this provision of the law is so far imperative as to render all contracts not in writing inoperative and void, or whether it is to be considered as only directory to the commissioners, was much discussed on the argument; but it is not necessary for the decision of this case to determine this question. It is evident, however, that both parties were mindful of this provision of the law, and expected to comply with it.

Even in a case between private individuals, where no writing is required, if it appears that the parties, although they have agreed on all the terms of their contract, mean to have them reduced to writing and signed, before the bargain shall be considered as complete, neither party will be bound until that is done, so long as the contract remains without any acts done under it on either side. *Wood* v. *Edwards*, 19 *Johns. R.* 212. The propriety of this rule is still more apparent in a case where one of the parties is acting in a public capacity, and their acts are made binding upon a municipal corporation, and where the law expressly requires them to make no other than written contracts. After the written contract was submitted to the board, they passed no resolution approving it, and did no act in any way signifying their consent to its terms. In about twelve days after it was submitted to them, they expressly signified their dissent, by passing the resolution of the second of June, so severely censured by the plaintiff's counsel, by which they declined Mr. Brown's bid, and rescinded the resolution originally accepting it. If no contract had been so entered into at this time as to be binding, they had a perfect right to do this.

It was urged for the plaintiff, that the action was brought, not for refusing to carry into effect a written agreement, but for refusing to enter into a written contract, as they had agreed to do. But this argument only begs the question in dispute. If no contract was so mutually agreed upon as to be binding on both parties, as seems to me to be too clear to

admit of doubt, neither party was bound to execute the written agreement. Until both parties had assented to its provisions, there was only a negotiation for a bargain, which was never completed, and which neither party was bound to complete.

We were referred to those cases in which the courts have held that an agreement by an insurance company to insure, which is usually effected by a written policy, binds the company to deliver the policy. *Hamilton* v. *Lycoming M. I. Co.*, 5 *Barr* 339; *Union M. I. Co.* v. *Com. M. I. Co.*, 19 *How*. 318. These cases turn on the fact that it is the usage of such companies to entrust their officers with the power to bind them by a verbal agreement; but no case has held that such an agreement is binding where the terms remain to be adjusted. The business of insurance is transacted under known rules and conditions, so that ordinarily, an agreement to insure for a specified premium, means an agreement to insure upon the customary stipulations. The case before us is of a very different character. The object was to have a difficult work so performed as to answer the important purpose of carrying a supply of water for Jersey City across the bottom of a river, which might be performed in many different ways, and was of a hazardous nature. A carefully prepared agreement, containing many stipulations not embraced in the original proposals, which in general terms were accepted, was obviously highly important to both parties, and it is evident both parties intended this should be prepared and mutually agreed upon and signed, before either should be considered as being bound.

In the case of *Com. In. Co.* v. *Hallock*, 3 *Dutcher* 645, this court held, that agreeing to insure and sending a policy by mail, bound the company, although the policy did not reach the assured until after the loss, upon the express ground that the contract was meant to be complete by those acts, and was not subject to any future action on either side. But where something more was to be done, the decision was different; it being held in the case of *Bellville M. In. Co.* v. *Van*

*Winkle,* 1 *Beas.* 339, that a mere agreement to insure was not binding where the law chartering the company required the deposit of a premium note before the assured received his policy.

Considerable evidence was produced at the trial to show that the plaintiff had suffered much loss and inconvenience, by relinquishing the business in which he had been previously engaged, when the resolution of April twenty-ninth was communicated to him; and allusion was made to this evidence upon the argument here. But this loss and inconvenience, whatever they may have been, were such as may always happen, if a party to a negotiation for a contract changes his business, in the expectation of succeeding in effecting it, but happens to fail in his object. That losses of this character constitute no legal ground of action, is shown by the fact appearing on the bills of exception, that the plaintiff's counsel disclaimed the right to recover any damages on this account.

In my opinion, the plaintiff failed to show a case which entitled him to a verdict, and, therefore, the judge erred in refusing to non-suit, and in charging as he did, for which errors the judgment must be reversed.

*For reversal*—BEASLEY, C. J., ELMER, FORT, VREDEN-BURGH, WALES, DALRIMPLE, WOODHULL, BEDLE.    8.

*For affirmance*—CLEMENT, CORNELISON, HAINES, KENNEDY, VAIL.    5.