## MANN ET AL. v. TOWN OF ROCHESTER.

[No. 3,588. Filed April 29, 1902.]

MUNICIPAL CORPORATIONS. — *Construction of Water-works.—Breach of Contract.*—Where the board of trustees of a town advertised for bids for the construction of a system of water-works under §4250 et seq. Burns 1901, accepted a bid, instructed its attorney to prepare a contract and forward the same to such bidder, but did not execute it upon its return, an action will not lie against the town for the breach of the contract.

From Cass Circuit Court; *D. H. Chase,* Judge.

Action by James Mann and others against the town of Rochester for breach of contract for the construction of a system of water-works. From a judgment for defendant, plaintiffs appeal. *Affirmed.*

*I. Conner, J. Rowley* and *C. W. Hendryx,* for appellants. *D. C. Justice* and *J. H. Bibler,* for appellee.

BLACK, J.—The amended first and second paragraphs of the complaint of the appellants were each held insufficient on demurrer. In the first paragraph it was shown that the appellants were partners whose principal place of business was Dowagiac, Michigan, their business being that of putting in water-works plants for cities and towns, and especially putting in the pipes used for such work; and the appellee was a duly incorporated town; that in December, 1892, the board of trustees of the town, pursuant to a petition signed by more than 100 freeholders and resident taxpayers of the town, ordered an election with respect to a proposed system of water-works for the town, at which the

electors had the option to vote for or against water-works; that notice of the election and the submission of such question thereat was published for three weeks successively, before the day of the election, in a newspaper named, printed and published in the town, and of general circulation therein, which notice was signed by the president of the board of trustees and by the town clerk; that the election was held conformably to law in December, 1892, and resulted in favor of water-works; that after the result of the election was known to the board of trustees, it procured plans and specifications for the proposed system of water-works, and caused the same to be filed by the clerk of the board, according to law, on the 30th of March, 1893; that the board immediately gave notice by publication in said newspaper, the notice being set out in the pleading, being a statement that sealed bids would be received by said board up to noon on April 25, 1893, and would be opened at eight p. m. the same day, for the construction of a complete system of water-works for the town; that there would be required seven and one-fourth miles of main, eighty hydrants, two pumps, two boilers, steel stand-pipe, brick pumping-station and chimney, inlet well, etc.; that bids would be received for the material and work separately, or for the work constructed complete; that each bid must be accompanied with a certified check or its equivalent; that the amount was named in the general specifications; that the plans might be seen and specifications procured at the office of the clerk of said board, or at the office of the engineer named, at Buffalo, New York; and that the right would be reserved to reject any and all bids,—the notice being signed by the president and the clerk of the board.

It was further alleged that the board, having so adopted plans and specifications, and having thus given notice, decided, on the 25th of April, 1893, to purchase the pipe for the system, and that it would let only the laying of the pipe, with the necessary work of putting it down and furnishing

Mann v. Town of Rochester.

the lead and hemp therefor; that the appellants were informed by the board of its purpose to so let the work, and therefore submitted a bid, accompanied by a deposit check as provided for in said notice or letting, which bid was sealed and handed in to the board, as follows: "Proposal for pipe laying by Mann & Andrew, of Dowagiac, Mich. To the honorable, the president and board of trustees of the corporation of Rochester, Ind. We beg leave to submit the following proposal: We will furnish all lead, hemp, and all tools necessary, and lay your pipe in the best possible manner, for the following prices for cast iron pipe: For 4in. pipe, 12c. per foot; for 6in. pipe, 14c. per foot; for 8in. pipe, 16c. per foot; for 10in. pipe, 18c. per foot; for 12in. pipe, 21c. per foot,—we setting all gates, gate-boxes, specials, and hydrants without extra cost to the corporation. Annexed find certified check for $250,"—signed by the appellants. It was alleged that this bid was in the aggregate sum of $5,200; that the board accepted the bid "and caused to be entered of record the following: 'Mann & Andrew, of Dowagiac, Mich., was awarded the contract for laying of pipe,' etc.; and in pursuance of said award, the said board directed its attorney, Virgil S. Reiter, by an entry of record as follows: 'The board then instructed said Reiter to prepare a contract for said work, and forward the same to Mann & Andrew, at Dowagiac, Michigan, which he did.' "

It was alleged that it was stipulated in said contract that the appellants would lay the pipes for the system of water-works as proposed in said town, to the extent of seven and one-fourth miles, furnishing all lead, hemp, and all tools necessary, and labor, and lay the pipe in the best possible manner, for the following prices: Cast iron pipe, etc., setting out the prices as in the bid of the appellants, they setting all gates, gate-boxes, specials and hydrants, without extra cost to the corporation, for the aggregate sum of $5,200; that they would begin the work as soon as

the weather would permit, and complete the same within six months, which cost of construction was to be paid when the work should be completed; that the appellants received the contract in due course of mail, and signed and accepted the same; that they also procured a bond conformably with the requirements and conditions of the letting of the work, which bond was executed by the American Surety Company of New York City; that after the signing of the contract by the appellants and the execution of the bond, the appellants sealed up the same in a large envelope, and addressed the same to the appellee, at Rochester, Indiana, and duly mailed the same to it; that the appellee received and accepted the same; "since which time, however, the said plaintiffs, nor either of them, have not seen said bond or contract, and they say the same, at the commencement of this cause of action, was either lost or destroyed, wholly without fault or negligence of said plaintiffs or either of them, and cannot now be found, for which reason no exact copy of either can be given, and they have to make oral proof thereof;" that immediately following the mailing of the contract they gathered together, at great expense, their necessary tools, engaged the necessary lead and hemp to lay the pipe, according to the plans and specifications and the terms and conditions of the contract, and employed laborers to perform the work; "and that they did then and there and do now stand ready and willing to perform all and singular the obligations incident to the completion of the work of laying the pipes for a system of water-works, and the performance of said contract as adopted by said defendant, at and before the letting of said contract;" that, although the appellants "did then and do now stand ready to perform all and singular the obligations under the terms and conditions of their contract and bond," the appellee refused to allow them to do the work or any part of it, notwithstanding all of the work was within the corporate limits of the town, and was under the control of the board of trustees and the

officers of the town; that, by reason of the refusal of the appellee to allow the work to be done according to the terms and conditions of the contract, the appellants have suffered a great loss of money and time, "and that a reasonable compensation of their rights and profits, the loss of which they have suffered wholly by reason of the violation of the terms and conditions of the contract by the defendant, is in the sum of $2,000; wherefore," etc. The second paragraph of complaint was like the first, with the additional averment that the appellants incurred in expenses with respect to preparation for the performance of the contract the sum of $122.95, an itemized account thereof being attached to the complaint, which sum, it was alleged, was due and wholly unpaid. There has been no discussion before us of the third paragraph of the complaint, a demurrer to which was sustained.

The paragraphs discussed present no suggestion of fraud in the failure or refusal to execute a contract as agreed upon. It is claimed, on behalf of the appellants, that the board of trustees being shown to have awarded a contract to the appellants, this created a binding obligation on the part of the appellee subsequently to execute a contract.

By statute of 1879, §4250 *et seq.* Burns 1901, authority was provided for the construction and maintenance of water-works by cities and incorporated towns having a population less than 45,000, provision being made for a board to be known as trustees of the water-works. By §13 of that act, §4264 Burns 1901, the trustees of the water-works were authorized "to make contracts for the erection of water-works buildings, * * * for the purchase of machinery and the manufacture and laying down of pipe; * * * and for all other purposes necessary to the full and efficient management and construction of the water-works; and such contracts shall be subject to the ratification by the common council [or board of trustees]." By §17, §4268 Burns 1901, it was provided: "Said trustees,

before entering into any contract for work to be done, shall cause two weeks' notice to be given in one or more daily newspapers of general circulation within the city or town, that proposals will be received by the trustees for performing the work, or the several parts of the same specified in said notice; and the trustees shall contract with the lowest bidder, if in their opinion said lowest bidder can be depended on to do the work with ability, promptness, and fidelity; which contract shall be subject to ratification by the common council [or board of trustees], as heretofore provided. But if such be not the case, said trustees may give the contract to the next lowest bidder, or decline to contract, and readvertise. Or if no daily newspaper be published in such city or town, then such notice shall be published three weeks consecutively in a weekly newspaper of general circulation within such city or town." And §18 of this statute provided: "Said trustees shall require bond to be given with good and sufficient security for the faithful performance of the work, * * * . Such bonds shall be submitted to the common council [or board of trustees] for approval."

By a statute of 1891, §4256, 4257 Burns 1894, it was enacted: "§1. That the office of and board of water-works trustees in cities and incorporated towns of less than 5,000 population [of which the town of Rochester is one] be and the same are hereby abolished." By §2 of this statute it was enacted that in such cities and towns, "the city common council, or the trustees of incorporated towns, may construct, conduct, manage, and control their own respective water-works," etc.

The requirements of the act of 1879 relating to the making of contracts by the trustees of water-works are therefore applicable to the board of trustees of the town, except the provisions relating to ratification of contracts of the trustees of the water-works and the approval of bonds, the giving of which it was their duty to require.

It is the purpose of the statute that a contract shall be made, and an acceptable bond shall be received, before the bidder shall acquire any right to perform the work. His right is not fixed by the ascertainment that he is the lowest bidder. Great latitude of discretion is given to the board of trustees, and, if in their opinion he can not be depended upon to do the work with ability, promptness, and fidelity, they may give the contract to next lowest bidder or decline to contract, and readvertise. They are not limited in this regard, until they have actually contracted. There was nothing in the published notice for bids· to authorize an inference of a proposal to regard the announcement of the lowest bid and the award of the contract to the lowest bidder as final without the subsequent execution of a contract by the town.

In connection with the entry of record of the awarding of the contract, as shown by the complaint, it appears that the board directed its attorney "to prepare a contract for said work, and forward the same to" the appellants, which he did. It does not appear that the board executed this contract, or dictated its provisions, or had knowledge even of the contents of the instrument. The attorney was directed to prepare "a contract." This, of course, did not make the appellee a party to the contract. On the contrary, considering the statute and the action of the board together, it is indicated that the board reserved its right to exercise its discretion to "decline to contract."

In bidding for the work, and in signing the contract, and offering the bond, the appellants were charged with knowledge of the powers and duties of the officers of the municipal corporation under the law; and were bound to know that all the various acts of the board of trustees and all their own acts in the premises were but steps leading up to the necessary contract, and would be ineffectual for any purpose unless a contract were executed by the municipal corporation, through its official agents, pursuant to the statute.

After the officers of the municipal corporation have fully exercised their discretionary official authority to make or not to make a contract in the interest of the corporation, and in pursuance of statutory directions have executed a contract in the interest of the corporation in its proprietary character, it is not to be supposed that the corporation can arbitrarily repudiate the engagement made for its advantage as a corporation. On the contrary, such a contract fully made will bind the municipal corporation as a like contract would bind a private corporation. But until the agents of the public corporation have exhausted their official discretion confided to them by law in the interest of the portion of the public represented by them, the corporation is not irrevocably committed as a contracting party. In the matter of the construction of water-works to be owned and managed by the city or town under the statutes above quoted, the municipality is under the protection of the discretionary authority of its official representatives, honestly exercised in its behalf, up to the final execution of the contract by them, and is entitled to receive through them the benefit of the exercise of their best judgment, based upon all information acquired by them, until their discretionary power is exhausted by the execution of the contract.

While the work here contemplated was to be undertaken in the interest of the community, the system of water-works was to be the property of the corporation, and under its control and management as corporation property, and the corporation was to use it for its own benefit, and was to derive therefrom a special revenue. The making of a contract for construction of such works was not the exercise of any of those continuing legislative or governmental powers which may not be ceded away so as to deprive the public corporation of future performance of its duties to the public on behalf of the State. On the contrary, such an engagement would constitute a contract, and, therefore,

would not be revocable at the will of one of the parties thereto. The town was competent to contract, and, being so, it, like a private corporation, could not arbitrarily recede from its engagement. Yet the exercise of the authority reposed by law in these officials involved the imposition of a special tax upon all the taxable property of the town. It also had relation, amongst other things, to the adequate protection of property within the town from fires, to the cleansing of market houses, the flushing of sewers, and other sanitary purposes. The language of the statute relating to the making of the contract is capable of being construed so as still to leave these matters, as results and purposes of their contemplated action, to the sound judgment of the municipal officials, exercised in good faith, until the contract shall have been executed by them.

It is the manifest meaning of the statute that the contract provided for thereby shall be a contract in writing, and it sufficiently appears to have been the purpose of the parties that the terms agreed upon by them should be reduced to writing, and should be signed by them, before the contract would be considered as completely made; and where such is the case, especially if one of the parties be acting in a public capacity, all that goes before such completion must be regarded as negotiations for a contract or steps leading to a contract. When all was done, something remained to complete the contemplated contract. *Water Commissioners* v. *Brown,* 32 N. J. L. 504; *People's Railroad* v. *Memphis Railroad,* 10 Wall. 38, 19 L. Ed. 844; *Dunham* v. *City of Boston,* 94 Mass. 375; *Bridge Works* v. *Bristol,* 170 Mass. 528, 49 N. E. 918.

Being of the opinion, upon the foregoing considerations, that the complaint does not show a breach of contract or an actionable violation of duty on the part of the appellee, we need not discuss the form of the complaint or the subject of damages.

Judgment affirmed.