## McCORMICK v. OKLAHOMA CITY et al.

(Circuit Court of Appeals, Eighth Circuit. February 22, 1913.)

### No. 3,690.

1. SPECIFIC PERFORMANCE (§ 128*)—NATURE OF RELIEF—PERFORMANCE OF WORK—ALLOWANCE OF DAMAGES.

Where, after the filing of a bill by a municipal contractor against a city to compel specific performance of an alleged contract and for an injunction to restrain the performance of a contract made with a competitor, the work contracted for had been completed, so that no decree for specific performance or for an injunction could be granted, equity nevertheless had jurisdiction, if complainant was entitled to recover, to allow damages under the prayer for general equitable relief.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 412–419; Dec. Dig. § 128.*]

2. MUNICIPAL CORPORATIONS (§ 335*)—PUBLIC IMPROVEMENTS—BIDS—WRITTEN CONTRACT—NECESSITY.

Where a city, on advertising for bids for a municipal improvement, both in the specifications and in the advertisement stated that the successful bidder must enter into a written contract to perform the work, and complainant knew from past experience that he would be required

to ·enter. into a written contract according to an adopted form in case his bid was accepted, a mere vote of the city council to accept one of complainant's bids and award a contract to him, which was thereafter reconsidered, no written contract ever having been executed, was insufficient to show the execution of a contract for the work between the city and complainant pursuant to his bid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ .860, 861, 863; Dec. Dig. § 335.*]

Appeal from the Circuit Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by David McCormick against the City of Oklahoma City and others. Decree for defendants, and complainant appeals. Affirmed.

B. F. Burwell, of Oklahoma City, Okl. (John Devereux, of Guthrie, Okl., and Burwell, Crockett & Johnson, of Oklahoma City, Okl., on the brief), for appellant.

J. W. Johnson, of Oklahoma City, Okl. (George A. Matlack and G. A. Paul, both of Oklahoma City, Okl., on the brief), for appellees.

Before ADAMS and SMITH, Circuit Judges, and WILLARD, District Judge.

SMITH, Circuit Judge. The city ,of Oklahoma City is, and has been since a time prior to the happening of the matters complained of, a municipal corporation in the state of Oklahoma, and as such has had under certain conditions authority to pave and improve its streets and alleys, including intersections, at the cost of the adjacent property owners. The law provided for a resolution in such cases by the city council to proceed with the improvements, containing such matter as would enable the engineer to prepare the necessary plans and specifications, and continued:

"Said resolution shall set forth any such reasonable terms and conditions as the mayor and council shall deem proper to impose with reference to the letting of the contract and the provisions thereof; and the mayor and council shall, by said resolution, provide that the contractor shall execute to the city a good and sufficient bond, in an amount to be stated in such resolution, conditioned for the full and faithful execution of the work and performance of the contract and for the protection of the city and all property .owners interested against any loss or damage by reason of the negligence or improper execution of the work, and may require a bond in an amount to be stated in such resolution. for the maintenance in good condition of such improvement for a period of not less than five years from the time of its completion, or both, in the discretion of the mayor and council.

"Said resolution shall also direct the city clerk 'to advertise for sealed proposals. for furnishing the materials and performing the work necessary in .making such improvement. * * * At the time and place specified in 'such notice, the mayor and council shall examine all bids received, and without unnecessary delay award the contract to the lowest and best bidder."

. Section 725, Snyder's Compiled Laws of Oklahoma.

.The law also provided for an appraisement and apportionment of the benefits and the assessment of the adjacent property therewith, payable in ten annual installments, and for the issuance of improvement bonds to be paid from such assessments; that they should be sold at not less than par, and "which bond or bonds shall in no event

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

become a liability of the city issuing the same." Section 726, Snyder's Compiled Laws of Oklahoma.

October 19, 1908, the mayor and city council adopted a resolution, substantially as provided by law, providing for the improvement of 18 of its streets, and in said resolution was the following:

"It is further resolved, that all the work done and material furnished shall be in strict conformity to the plans and specifications of the city engineer therefor and of the proper quality and tests; that the contractor to whom a contract shall be awarded for the construction of such improvements shall execute to the city a good and sufficient bond in a sum equal to 20 per cent. of the contract price, conditioned for the faithful performance of the work and the execution of the contract and for the protection of the said city and all property owners against any and all loss or damage by reason of neglect or improper execution of the work; and the said contractor shall also execute good and sufficient bond in a sum of 10 per cent. of the contract price, conditioned for the maintenance of such work in a street of good repair for a period of not less than five years from the date of the completion and acceptance of such work.

"Be it further resolved, that the city clerk of said city be and he is hereby authorized and directed to advertise for sealed bids for furnishing the materials and performing the work necessary to and for the improvement of such streets in the manner required by law, each bid to be accompanied by certified check in the sum of 3 per cent. of the amount of the bid, to be forfeited to the city in case the successful bidder fails to enter into the contract and give the required bond within the required time."

The specifications thus referred to contained the following:

"All bids for work to be performed under this contract shall be accompanied by a certified check for 3 per cent. of bid dollars ($......), and in case of failure on the part of the successful bidder to enter into contract within twenty (20) days after notice of acceptance of such bid, said check to become the property of the city of Oklahoma City, as liquidated damages for failure to enter into such contract. Upon execution of said contract within said twenty (20) days, said check to be returned to the bidder furnishing it."

October 21 to 31, 1908, the city clerk advertised for bids on this work. In his advertisement was the following:

"Each bid must be accompanied by certified check in the sum of three per cent. (3 per cent.) of the amount bid, to be forfeited to the city in case the successful bidder fails to enter into a contract and give the required bond within the required time. Contractor will be required to give bond in the sum of twenty per cent. (20 per cent.) of the contract price, for the faithful performance of said work and the holding of the city harmless from any and all damages which might occur. Bids will be received from both a five (5) year and ten (10) year guaranty. Also the contractor will be required to give a bond in the sum of ten per cent. (10 per cent.) of the contract price as a guaranty of keeping the pavement in a state of good repair for a period of five (5) years if bids are accepted on a five (5) year guaranty, and in a state of good repair for a period of ten (10) years if bids are accepted on a ten (10) year guaranty. The contractor shall receive for the above work street improvement bonds at par value against the abutting property according to House Bill No. 231, approved April 17, 1908.

"No proposition will be considered on any street which does not contain a bid upon every item included in the estimate of the city engineer for such street.

"Council reserves the right to reject any or all bids."

In response to these advertisements Mr. David McCormick, the R. F. Conway Company, and others made bids. Both McCormick

and the Conway Company bid on a five and ten year guaranty. On November 2, 1908, the bids were opened by the city council. McCormick was the lowest bidder on a ten-year guaranty and the R. F. Conway Company was the lowest bidder on a five-year guaranty. At a meeting on November 4th the council by a unanimous vote rejected all bids on a five-year guaranty. The council then decided to take up the bids street by street, and that contracts be awarded the lowest and best bidder, and adjourned to 2:30 p. m. A motion was then made to reconsider the action in the forenoon to take up the bids street by street, and that contract be awarded to the lowest and best bidder, and this motion was lost. Thereupon the bids were taken up street by street, and as to each substantially the following appears:

"Moved by Mr. McWilliams, seconded by Mr. McDavie, that the bid of David McCormick, being the lowest and best bid, be accepted, and he be awarded the contract for the paving of the above-described street. Motion carried."

Thereupon:

"Moved by Mr. Helm, seconded by Mr. Workman, that the action of the council in awarding contracts for asphalt paving at this meeting be rescinded. Motion lost."

On November 9, 1908, the following proceedings are recorded:

"Moved by Mr. Highley, seconded by Mr. Helm, that the council reconsider the action taken at meeting held November 4, 1908, 'in rejecting all bids for asphalt pavement based on five year guaranty.' Motion carried."
"Moved by Mr. Highley, seconded by Mr. Corder, that the council reconsider the action taken at the meeting held November 4, 1908, in awarding contracts for all asphalt paving."

The council adjourned to November 10th, and then to the 11th, when the city attorney reported that in his opinion:

"Any time before the contracts are signed up by the city and the contractor, that the council had the right to rescind its action in awarding said contracts."

Judge Burwell appeared before the council and spoke against the motion, and Judge Harris spoke in favor of the same. Thereupon the motion to rescind the action taken at the meeting held November 4, 1908, in awarding contracts for all asphalt paving carried by a vote of six to four. Later Judge Burwell presented 18 contracts of David McCormick for paving the streets formerly awarded him and demanded that they be accepted by the council. Thereupon the council took up the bids under the five-year guaranty, and, finding that in the aggregate the bids of the R. F. Conway Company were some $11,000 below those of David McCormick, awarded contracts to it. The R. F. Conway Company presented its bonds and contracts, and the council ordered they be approved and accepted.

The city had a form of printed and written contract which was used both by the plaintiff and the R. F. Conway Company in the preparation of their 36 contracts. These contracts contained numerous provisions not in the advertisements, plans, and specifica-

tions, the bids, and their acceptance. These contracts all contained the following provision:

"This contract is entered into subject to the approval or rejection of the council of the City of Oklahoma City, and it shall not bind either party until so approved and confirmed, and is subject to all city ordinances now in force relating to such matters."

The plaintiff is president of the Parker-Washington Company and as such had made similar contracts with the same city to an amount exceeding $250,000. If he knew that such contracts would be expected, he agreed thereto prior to tendering the 18 contracts in question. If he did not understand that by his bid he was agreeing to such contracts as he knew from past experience the city would demand, then there was no meeting of the minds of the parties. If he did so understand, he knew that the contract contained the provision that:

"It shall not bind either party until so approved and confirmed."

On November 16th Mr. McCormick brought suit in the state district court for Oklahoma county against the mayor of Oklahoma City and others, and obtained a temporary restraining order. The R. F. Conway Company were upon leave of court made defendants. December 4th a demurrer was sustained to the petition, and on December 5th plaintiff was granted 20 days to file amended petition, and on December 23d 15 days additional were granted him, and on January 25, 1909, 10 days additional were granted to file an amended petition. On the same day the action was dismissed, but on January 27th it was reinstated, and the suit was still pending after this suit was brought.

The bill sets up the facts, alleges the contract was completed between the plaintiff and the city, and prays a decree of specific performance of its alleged contract, a temporary and possibly a permanent injunction, and for general equitable relief. The defendants in answer allege that all that took place between the plaintiff and parties defendant constituted only preliminary negotiations, and deny there was ever any completed contract. Upon full hearing the court dismissed the proceedings, and David McCormick appeals.

[1] Since the filing of the bill the contracts have all been completely performed by the R. F. Conway Company, and of course a decree for specific performance is now out of the question, and an injunction is likewise impossible. Mr. McCormick insists that, notwithstanding this fact, if the court should now find in his favor, it could assess his damages under the prayer for general equitable relief. Omaha Horse Railroad Co. v. Cable Tramway Co. (C. C.) 32 Fed. 727; Milkman v. Ordway, 106 Mass. 232; Woodbury v. Marblehead Water Co., 145 Mass. 509, 15 N. E. 282; Van Allen v. N. Y. Elevated Railroad Co., 144 N. Y. 174, 38 N. E. 997; Holland v. Anderson, 38 Mo. 55, 58; Lewis et al. v. Town of North Kingstown, 16 R. I. 15, 11 Atl. 173, 27 Am. St. Rep. 724.

It thus becomes important to determine whether the plaintiff had a valid and completed contract or not. It appears that the city had,

by its specifications, advertisement for bids, and contracts prepared for such cases, provided expressly for a written contract. The ques tion here is not, therefore, whether in the absence of these require- ments there would have been a contract, or the right to maintain an action of mandamus, but was the city bound the moment it voted to award the contract to McCormick, or was it necessary, in the absence of a waiver, to give him notice of the award and to prepare and sign a written contract?

Appellant has argued at length upon the distinction between the governmental or public functions of a city and its property and busi- ness powers. This distinction was pointed out with care by this court in Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518, and it will be conceded for the purposes of this case that in awarding these contracts the city of Oklahoma City was acting in the exercise of its business powers.

It is not important to consider the numerous authorities cited that ordinarily the award, at least with notice, would have concluded a contract with Mr. McCormick. Neither is it important to deter- mine whether he had the right to a writ of mandamus or other writ to compel execution of a contract if suit were promptly brought.

[2] The question is whether the plaintiff had such a contract as that an action for specific performance or an injunction would lie, in view of the fact that the specifications, advertisement for bids, and contract prepared and regularly used by the city expressly contem- plated a formal written contract. Judge Dillon says:

"After the opening of the bids, the ascertainment of the lowest or most favorable bidder and the adoption of a resolution that the contract be awarded to him does not make a completed contract between the municipality and the bidder, when the charter requires that all contracts relating to city affairs shall be in writing, or when the advertisement so specifies." Dillon on Mu- nicipal Corporations (5th Ed.) 810.

And it is stated in the American and English Encyclopedia of Law:

"Where the parties make the reduction of the agreement to writing and its signature by them a condition precedent to its completion, it will not be a con- tract until that is done; and this is true, although all the terms of the con- tract have been agreed upon." 7 Am. & Eng. Enc. of Law (2d Ed.) 140.

"A vote accepting a bid is not a contract, where a provision is distinctly made for the future execution of a formal contract." 20 Am. & Eng. Enc. of Law (2d Ed.) 1170.

And in Cyc. it is said:

"Where parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of minds while such agree- ment is incomplete. Thus, where they intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed." 9 Cyc. 280.

These authorities are sustained by Jersey City Water Commis- sioners v. Brown, 32 N. J. Law, 504; State v. Noyes, 25 Nev. 31, 56 Pac. 946; Eads v. Carondelet, 42 Mo. 113; Starkey v. Minne- apolis, 19 Minn. 203 (Gil. 166); Mississippi & Dominion Steamship Co. v. Swift, 86 Me. 248, 29 Atl. 1063, 41 Am. St. Rep. 545; Hodges v. Sublett, 91 Ala. 588, 8 South. 800; Congdon v. Darcy, 46 Vt. 478;

Mann v. Rochester, 29 Ind. App. 12, 63 N. E. 874; Edge Moor Bridge Works v. Bristol County, 170 Mass. 528, 49 N. E. 918; Dunham v. Boston, 12 Allen (Mass.) 375; Hamilton v. Chopard, 9 Wash. 352, 37 Pac. 472; State ex rel. Cleveland Trinidad Paving Co. v. Board of Public Service of Columbus, 81 Ohio St. 218, 90 N. E. 389. In the last case, where there was no notification by the council to the bidder, it was held that it did not constitute an agreement.

Of course, the distinction must be borne in mind between the enforcement of an executory and an executed contract. If, with the acquiescence of the defendant, the plaintiff had gone on without a written contract, and executed the contract they were negotiating upon, and the city had received the benefits, it is probable it could not have defeated him in an action to recover the bonds.

The rule undoubtedly is that if the parties have completed their negotiations, and reached an entire basis of agreement, and one party, with the knowledge and acquiescence of the other, has gone on and performed the contract in whole or in part, without the formal reduction of the contract to writing, the other party will be held to have waived the execution of the written contract. Argenti v. San Francisco, 16 Cal. 256; Ft. Madison v. Moore, 109 Iowa, 476, 80 N. W. 527; Beckwith v. City of New York, 121 App. Div. 462, 106 N. Y. Supp. 175. And especially is this true where a property owner is resisting an assessment under such proceedings. Ross v. Stackhouse, 114 Ind. 200, 16 N. E. 501. We shall therefore assume that where parties have fully agreed upon a contract, but have simply decided to reduce it to writing as evidence, the contract may be enforced, especially where it has been executed in whole or in part by the party seeking its enforcement, with the knowledge and acquiescence of the other party, notwithstanding the failure to reduce it to writing. But if the parties have stipulated in effect that the contract shall only be in force from the time it is reduced to writing and executed, there is no completed contract until it is put in writing as agreed.

It is claimed that Mr. McCormick was present at the meeting of November 4, 1908, and knew of the action of the council in awarding him the contracts. This court is in grave doubt whether the mere presence of an interested party during the public deliberations of such a legislative body as the city council would serve to make an award binding upon the city until it saw fit to notify him that it had accepted the proposition; but it is not necessary to pass upon this question, as the court is of the opinion that, the city of Oklahoma City having expressly provided by its specifications and advertisement that the contract must be reduced to writing, and Mr. McCormick having known from past experience what would be expected in the way of a written contract, the city was not bound, in the absence of the execution of such a contract, to proceed further with the plaintiff, and the decree of the Circuit Court in dismissing his bill was correct.

It is therefore ordered and adjudged that it be affirmed.