**BERKELEY UNIFIED SCHOOL DIST. OF
ALAMEDA COUNTY v. JAMES I.
BARNES CONST. CO. et al.**

No. 30818.

United States District Court
N. D. California, S. D.

May 18, 1953.

J. F. Coakley, Dist. Atty., Oakland, Cal., for plaintiff.

Wallace & Cashin, Los Angeles, Cal., Weinmann, Rode, Burnhill & Moffitt, Oakland, Cal., Worthington, Park & Worthington, San Francisco, Cal., for defendants.

OLIVER J. CARTER, District Judge.

This is an action for breach of contract. Plaintiff is the Berkeley Unified School District, a public corporation authorized by, and organized under, laws of the State of California. Defendants are the James I. Barnes Construction Company, a copartnership, hereinafter referred to as "defendant contractor," and the Seaboard Surety Co., a corporation, hereinafter referred to as "the surety company."

Plaintiff originally filed this action in the Superior Court of the State of California, and thereafter, defendants secured its removal to this court, invoking federal jurisdiction upon the ground of diversity of citizenship. Defendants now move to dismiss the "first cause of action" alleged in the complaint upon the ground that it fails to state a cause for which relief can be granted.

It is contended that the allegations of the complaint fail to establish the existence of a contract. As to the existence of a contract, the complaint indicates as follows:

Plaintiff, by advertisement in a newspaper, invited the submission of bids for the construction of two public school buildings in the city of Berkeley, California. This invitation prescribed the following requirements for all bids: (1) bids could be submitted only upon "bid forms" prepared by plaintiff; (2) each bid was required to be accompanied by a bid bond (drafted by plaintiff), cashier's check or certified check in the amount of $25,000; (3) bids were required to be made in accordance with a designated set of plans and specifications; (4) minimum wage standards were specified for labor to be employed on the project to which the bids applied.

Defendant contractor submitted a bid, offering to construct the school buildings for the sum of $1,377,700. The bid was in accordance with the requirements set out in the advertisement for bids and was accompanied by the required bid bond, executed by defendant contractor as principal and the surety company as surety. The bid itself was a mimeographed form, which had been prepared by plaintiff, containing blanks to be filled in by the bidder. The bid contains certain significant language, to wit:

(1) the bidder "hereby proposes and agrees to furnish all labor, materials, equipment, mechanical workmanship, transportation and services for the erection and completion of said work, in strict accordance with said plans and specifications * * *." for a specified sum;

(2) the bidder "will furnish all labor, materials, equipment, mechanical workmanship, transportation, and services to be em-

ployed in the erection and construction * * *." of certain additional projects supplementing the principal project for certain specified sums;

(3) the bidder "has carefully examined the form of contract which he will be required to sign should he be the successful bidder, and in that event will execute the contract for this work and will perform all of the terms, covenants and conditions of said contract within the time and in the manner set forth in said plans and specifications, Information to Bidders and General Conditions."

Thereafter, plaintiff opened all sealed bids which had been submitted, determined that the bid of defendant contractor was the lowest responsible bid, and passed a resolution accepting such bid and awarding the contract to this defendant. Plaintiff then notified the defendant construction company that it had been awarded the contract and tendered, for execution, a formal contract embodying all the terms specified in the advertisement for bids and the bid submitted by this defendant.

The defendant construction company refused to execute the tendered contract or to furnish performance bonds as required by the invitation for bids and by law. Subsequently, plaintiff again advertised for sealed bids to be submitted for the proposed construction. From the bids submitted in response to this second advertisement, that of a firm called Moore & Roberts, Inc. was determined to be the lowest responsible bid and the contract was awarded to that firm. Moore & Roberts, Inc. then executed a formal contract with plaintiff. The bid of Moore & Roberts, Inc. exceeded that of defendant contractor, and because of this fact, plaintiff alleges damage.

The general rule is that where a public body advertises for bids, a good and binding contract is formed when the public body, acting by responsible officers, accepts a written bid of a bidder. 3 McQuillan, Municipal Corporations, Sec. 1338, pp. 923–925; United States v. Purcell Envelope Co., 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620; Turner v. City of Fremont, 8 Cir., 170 F.

259; United States v. Conti, 1 Cir., 119 F. 2d 652; Wiles v. Hoss, 114 Ind. 371, 16 N.E. 800; Denton v. City of Atchison, 34 Kan. 438, 8 P. 750; Middleton v. City of Emporia, 106 Kan. 107, 186 P. 981; State ex rel. Robert Mitchell Furniture Co. v. Toole, 26 Mont. 22, 66 P. 496, 55 L.R.A. 644, 91 Am.St.Rep. 386; Platte City to Use of Prior v. Paxton, 141 Mo.App. 175, 124 S.W. 531. See also M. F. Kemper Const. Co. v. City of L. A., 37 Cal.2d 696, 235 P.2d 7; 15 Op.Atty.Gen.Cal. 123. An exception to this rule is that a contract is not so created where a statute or municipal charter prohibits liability except where the contract has been executed according to prescribed formalities, or where the call for bids or the resolution of acceptance specifies that liability shall not occur unless the agreement is reduced to a formal writing. 3 McQuillin, Municipal Corporations, Sec. 1343, pp. 933–934; Edge Moor Bridge Works v. County of Bristol, 170 Mass. 528, 49 N.E. 918; Franklin A. Snow Co. v. Commonwealth, 303 Mass. 511, 22 N.E.2d 599; Wayne Crouse, Inc., v. School Dist. of Braddock, 341 Pa. 497, 19 A.2d 843; Water Com'rs of Jersey City v. Brown, 32 N.J.L. 504; Mann v. Rochester, 29 Ind. App. 12, 63 N.E. 874; Smart v. Philadelphia, 205 Pa. 329, 54 A. 1025; Covington v. Basich Bros. Const. Co., 72 Ariz. 280, 233 P.2d 837; Palo and Dodini v. City of Oakland, 79 Cal.App.2d 739, 180 P.2d 764. See also 1 Williston on Contracts, Sec. 31, pp. 75–76.

Section 18051 of the California Education Code prescribes the mode in which the governing boards of school districts may make contracts. That section provides:

"The governing board of any school district shall let any contracts involving an expenditure of more than five hundred dollars ($500) for work to be done * * * to the lowest responsible bidder who shall give such security as the board requires, or else reject all bids. * * *"

See also Reams v. Cooley, 171 Cal. 150, 152 P. 293. Neither that section nor any other California statute imposes upon school districts the requirement that the contract it-

self be executed in accordance with specified formalities.

■ It is true that the duties of the governing board of a school district may to some extent be circumscribed by the provisions of a city charter. See Esberg v. Badaracco, 202 Cal. 110, 259 P. 730; Dupuy v. Board of Education, 106 Cal.App. 533, 289 P. 689. The only provision of the Charter of the City of Berkeley, California which could have any possible relation to the instant problem is Section 65, which, in part, provides:

"* * * All contracts must be in writing, executed in the name of the City of Berkeley by an officer or officers authorized to sign the same, and must be countersigned by the Auditor, who shall number and register the same in a book kept for that purpose."

■ The question then is whether or not that section applies to the Board of Education, which is the governing body of the Berkeley Unified School District. A school district is a separate entity from the city in which it is located. Ward v. San Diego School Dist., 203 Cal. 712, 265 P. 821, 822. In the cited case, quoting from Kennedy v. Miller, 97 Cal. 429, 32 P. 558, it was said, "* * * The legislative declaration that every incorporated city is a school district does not import into the organization of the school district any of the provisions of the city charter, or limit the powers and functions which, as a school district, it has by virtue of the Political Code. The city is a corporation distinct from that of the school district, even though both are designated by the same name, and embrace the same territory. The one derives its authority directly from the Legislature, through the general law providing for the establishment of schools throughout the state, while the authority of the other is found in the charter under which it is organized; and, even though the charter may purport to define the powers and duties of its municipal officers in reference to the public schools in the same language as has the Legislature in the Political Code, yet these powers and duties are referable to the legislative authority, and not to the charter. * * *"

■■ It should be noted that the provision of the Berkeley Charter limiting the public contracting power refers, in terms, to contracts to be made in the name of the City of Berkeley. As pointed out above, the Berkeley Unified School District, in which name the contract either was made or was to be made, is a legal entity separate and distinct from the City of Berkeley. Furthermore, members of the city board of education are not city officers. Kelso v. Board of Education, 42 Cal.App.2d 415, 109 P.2d 29. See also Lansing v. Board of Education, 7 Cal.App.2d 211, 45 P.2d 1021. State law imposes the duty of building school houses upon the governing boards of school districts, not upon cities. California Education Code, Sec. 18151. Thus, the Charter of the City of Berkeley fails to impose any limitation upon the mode of contracting of the governing board of the school district.

■ Defendant contractor contends that it was not within the contemplation of the parties that a contract should be formed until the execution of the formal document referred to in the advertisement for bids and the bid itself. It is true that parties to an agreement may make its reduction to a formal writing and the execution of such writing a condition precedent to its effectiveness notwithstanding complete agreement to all its terms. Power Service Corp. v. Joslin, 9 Cir., 175 F.2d 698; Pacific Coast Joint Stock Land Bank of San Francisco v. Jones, 14 Cal.2d 8, 92 P.2d 390, 123 A.L.R. 695; Mercantile Trust Co. of San Francisco v. Sunset Road Oil Co. 176 Cal. 451, 168 P. 1033; Spinney v. Downing, 108 Cal. 666, 41 P. 797. See also notes 122 A.L.R. 1217, 165 A.L.R. 756. However, the general rule is that though the parties contemplate the ultimate execution of a more formal writing, the acceptance of a bid or offer results in a binding contract when none of the material terms remain unsettled or require future determination. Power Service Corp. v. Joslin, supra.

Defendant contractor's argument is that the use of the words, "Should the party or parties to whom the contract should be awarded fail to enter into the contract * * *," indicates that it was the under-

standing of the parties that neither party should be bound until the formal contract was executed. In this connection, defendant contractor also relies upon language in the bid, to the effect that the bidder "has carefully examined the form of contract which he will be required to sign * *."

No question is raised as to the lack of agreement between the parties as to any material provision of the contract. The only question is as to whether or not the execution of the formal document was a condition precedent to the formation of the contract. Courts are disinclined to construe the stipulations of a contract as conditions precedent unless so compelled by language plainly expressed. San Diego Const. Co. v. Mannix, 175 Cal. 548, 166 P. 325. Not only does the language of the bid state that the bidder has "examined the form of contract which he will be required to sign," but it also states that if the bidder is awarded the contract that he "will execute the contract for this work and will perform all the terms, covenants and conditions of said contract * * *." Thus there is a clear promise in the bid to perform the construction if the contract is awarded. The promise "to execute a contract" under the circumstances is no more than a promise to sign the formal document which would contain all of the terms and conditions previously agreed to by the parties. The use of the words "enter into the contract" in the advertisement for bids does not condition the attachment of liability, but in terms refers to the forfeiture of the bid bond. Such language, when considered with that of the bid which promised to perform the construction for a specified price if the contract was awarded, fails to indicate that it was the manifest intention of the parties that the bidder should not become liable to perform that express promise unless a formal document was signed after acceptance of the bid.

The construction contended for by defendant contractor would leave a bidder whose competitive bid had been accepted by a public corporation free to determine, after such acceptance, whether he would revoke his bid or not. The view is almost uniform that a bid submitted to a municipal corporation in response to an advertisement constitutes an irrevocable offer. Conduit & Foundation Corp. v. Atlantic City, 2 N.J. 433, 64 A.2d 382, noted 47 Mich.L.R. 1220; Bowes Co. v. Inhabitants of Town of Milton, 255 Mass. 228, 151 N.E. 116; Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1104; City of Baltimore v. J. L. Robinson Const. Co., 123 Md. 660, 91 A. 682, L.R.A.1915A, 225; United States v. Conti, supra; City of Hattiesburg v. Cobb Bros. Const. Co., 174 Miss. 20, 163 So. 676. This rule is adhered to in California, where it is held that once opened and declared, a bid on a municipal public improvement project is in the nature of an irrevocable option, a contract right of which the municipal corporation cannot be deprived without its consent. M. F. Kemper Const. Co. v. City of L. A., 37 Cal.2d 696, 235 P.2d 7.

Since defendant contractor's bid constituted an irrevocable offer to the school district, all that was required to form a contract was a valid acceptance. The governing board of the school district determined that defendant contractor had submitted the lowest responsible bid and accepted that bid by a resolution. No other limitation existing as to the power of that board to make a contract, that resolution, when communicated to defendant contractor, was effective to accept the bid and to form a contract.

Defendants also challenge the "first cause of action" upon the ground that plaintiff is limited to a recovery on defendants' bid bond pursuant to a provision in the advertisement for bids providing that upon the failure of the party or parties to whom the contract should be awarded to enter into the contract and file the required performance bonds, "the amount paid by the bidder or his surety to the terms of said bid bond * * * will be retained by said Berkeley Unified School District as agreed and liquidated damages."

This matter cannot be decided properly on motion to dismiss. Therefore the motion is not well taken. This is an

issue to be pleaded by way of answer or defense under the provisions of Rule 8 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The question of whether a provision for liquidated damages is valid is essentially a question of fact to be pleaded and proved.

In California, contracts providing for liquidated damages are, except for those falling within a class defined by statute, to that extent void. California Civil Code, Section 1670. The exception to the general prohibition is provided for in Section 1671 of the California Civil Code, which provides:

"The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

Since the advertisement for bids expressly provides that the amount of the bid bond shall be retained as "liquidated damages," that provision of the contract is void unless from the nature of the case it was impracticable or extremely difficult, at the time of contracting, to fix the actual damages. The most recent California case on the subject is Better Foods Markets, Inc., v. American Dist. Teleg. Co., 40 Cal. 2d —, 253 P.2d 10, 14, where it is said:

"Unless a clause providing for liquidated damages falls within the provisions of section 1671 it is invalid, Dyer Bros. Golden West Iron Works v. Central Iron Works, supra, 182 Cal. 588, 593, 189 P. 445; Long Beach City School Dist. v. Dodge, 135 Cal. 401, 405, 67 P. 499; and except on admitted facts this is generally a question to be resolved by the trier of fact, Rice v. Schmid, 18 Cal.2d 382, 385, 115 P.2d 498, 138 A.L.R. 589; Petrovich v. City of Arcadia, 36 Cal.2d 78, 86, 222 P.2d 231; Dyer Bros. Golden West Iron Works v. Central Iron Works, supra, 182 Cal. 588, 593, 189 P. 445. It is settled law that the burden is on the party seeking to rely upon a liquidated damage provision in a contract

to plead and prove facts showing impracticability. Rice v. Schmid, supra, 18 Cal.2d 382, 385, 115 P.2d 498; Dyer Bros. Golden West Iron Works v. Central Iron Works, supra, 182 Cal. 588, 593, 189 P. 445."

See also Atkinson v. Pacific Fire Extinguisher Co., 40 Cal.2d —, 253 P.2d 18. The fact that one of the parties is a public corporation does not exempt the contract from the statutory prohibition against liquidated damage provisions. City of Los Angeles v. Shafer, 53 Cal.App. 458, 200 P. 384.

For the reasons heretofore stated, the motion to dismiss the "first cause of action" of plaintiff's complaint should be denied.