## JAMES D. MORIARTY v. BOARD OF COMMISSIONERS OF THE CITY OF ORANGE.

Submitted July 10, 1916—Decided August 14, 1916.

The city of O. contracted with M. for the removal of garbage and ashes for four years, and provided that if the contractor after due notice and hearing should be found guilty of a violation of specifications and conditions, the city should be entitled to $50 for each violation as liquidated damages; and further, that if the work was not performed satisfactorily to the board of commissioners, they might terminate the agreement by resolution; and that the contractor and his surety should then be compelled to pay the cost to the city of finishing the work for the unexpired time. The city terminated the agreement by resolution, of which the contractor had notice, and made a contract with another concern for the removal of garbage and ashes. *Held*, that the resolution was not within the provisions of section 6 of the Commission Government act (*Pamph. L.* 1912, *p.*

649), which is intended only to apply to original contracts, and not mere subsidiary contracts provided for by the terms of the original contract, as in this instance. *Held, also,* that it was legal to insert in the contract a provision for its termination, even if the statute did not, in express language, authorize such a provision, as details must be left to the municipality. *Held, further,* that prosecutor was not entitled to be heard before the passage of the resolution terminating the contract, no such requirement being inserted in the contract.

On *certiorari.*

The city of Orange contracted with Moriarty for the removal of ashes and garbage for four years from August 20th, 1914. The contract provided that if after hearing on due notice, Moriarty should be found guilty by the board of commissioners of a violation of the specifications and conditions, the city should be entitled for each violation to $50 as liquidated damages. It was further agreed that if the work was not performed satisfactorily to the board of commissioners, they might by resolution terminate the agreement by mailing a certified copy of the resolution to the last post-office address of Moriarty, and that he and his surety should then be compelled to pay whatever the city should be compelled to lay out to finish the work for the unexpired period of the agreement and make good any damages the city should suffer by reason of the breach. This further provision omits any requirement of notice to Moriarty such as is contained in the clause above set forth. In March and April, 1916, Moriarty pleaded guilty to two separate charges of violation of the contract, the last of which was on April 15th, and was fined $50 for each violation. On May 9th, a resolution was adopted setting forth that the work was not being performed satisfactorily to the board and the contract was terminated from and after May 11th. Moriarty's counsel were present and suggested that if the city terminated the contract, the bonding company be given a chance to take over the contract, but no action was taken on this request. It is not questioned that Moriarty had such notice of this resolution as the contract required. On May 10th, a contract was made with the

Maloney Contracting Company for removal of garbage, ashes and house refuse for a period beginning May 12th, 1916, for $70 per working day. This contract was terminable on five days' notice. On June 3d the present writ was allowed removing for review by this court the proceedings at the meeting of May 9th.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutor, *George W. Anderson* and *Frank E. Bradner*.

For the defendants, *Arthur B. Seymour*.

The opinion of the court was delivered by

SWAYZE, J. We think the resolution is not such as is contemplated by section 6 of the Commission Government act. *Pamph. L.* 1912, *p.* 649. So far as the resolution merely terminates Moriarty's contract, it is not even within the words of section 6; so far as it authorizes the making of a contract, the act is intended only to reach original contracts and not to include merely subsidiary contracts that are already provided for by the terms of contracts duly made. In the present case, the original contract with Moriarty, the validity of which is not questioned, provided that he and his surety should be compelled to pay whatever the city was compelled to lay out to finish the work. The subcontract necessary for that purpose was impliedly authorized by the duly adopted principal contract with Moriarty. We think nothing more was necessary. If we were wrong in this, the prosecutor would not be entitled to relief, since on the prosecutor's view the resolution cannot be held to have been finally adopted, and would be merely the form in which it was proposed to be finally adopted. The statute evidently contemplates two proceedings—*first*, the completion of the form in which the ordinance or resolution must be finally passed; *second*, the final passage or adoption at least two weeks thereafter. It is only on this supposition that the word "final" in the act can

be given a sensible meaning. The reason underlying the act seems obvious. The provision was meant to insure against haste or trickery in municipal legislation. To that end, the public were to have two weeks to examine the proposed resolution or ordinance, and it was not subject to amendment. Since the present resolution was not finally passed within the meaning of the statute, the prosecutor could not be injured, even on his own view. He would have the right to go on doing the work as he has done, and the city would be obligated to pay him. The prosecutor as taxpayer could not be injured since the city would owe nothing to the Maloney company for work done before the resolution was finally adopted. The result would then be a dismissal of the writ as prematurely allowed. But for the reason we have before stated, we think the resolution became effective at once, and we proceed to the other objections raised by the prosecutor.

It was legal to insert in the contract the provision for its termination. The argument that no such provision is authorized by the statute is beside the point. It may be extra-statutory, but that is very different from being illegal. It would be intolerable if the legislature were required to authorize specifically every provision and specification of every municipal contract. The details must be left to the municipality, as in fact they always have been. The suggestion that the right to terminate a contract opens the door for the evasion of competitive bidding is without force. The fact that a provision which is intended to protect the rights of the city by securing prompt and exact performance on the part of the contractor, adds to the power of the municipality, is far from being against public policy; it is quite in accordance therewith. If in fact the provision is perverted for the purpose of evading the requirement of competitive bidding, the court can readily correct the evil by setting aside the fraudulent contract. There is no suggestion of fraud in this case.

It is hardly necessary to deal with the suggestion that there should have been unanimous action by the board. In this

case as in others, the act of a majority at a meeting of the board duly held, is the act of the board.

That the prosecutor was not entitled to be heard in such a case is settled in this court. *Miller* v. *Atlantic City,* 74 *N. J. L.* 345. The contract with Moriarty itself makes a distinction by requiring due notice to him when it is sought to impose the $50 for damages and omitting that requirement in the clause authorizing the termination of the contract.

That the city had not only its remedy by exacting the $50 for liquidated damages, but also its remedy by terminating the contract is clear. The damages are for actual violation of contract; the termination is authorized as a remedy for unsatisfactory performance. Violation of the contract may justify the board of commissioners in their dissatisfaction, but performance that may well be unsatisfactory may not go so far as to amount to violation. The contract contains the two clauses because each dealt with a different situation.

If the prosecutor was in fact misled by the mayor, it was his own fault. His mistake, or the conduct of the mayor could not bind the board. By the contract it was the board that was to be satisfied, not the mayor alone.

Whether the prosecutor was under a legal obligation to remove house refuse or dead animals is of no importance. If an attempt was made to impose upon him greater burdens than the contract warranted, his remedy was to refuse to do the extra work and stand on his contract rights.

The argument that the contract with the Maloney Contracting Company should have been let only after competitive bidding cannot prevail. That contract was only a means of carrying out the provisions of the original contract with Moriarty—a subcontract. The case is quite like *Camden* v. *Ward,* 67 *N. J. L.* 558. Nor is there any proof that the appropriations will be exceeded by carrying out the contract with the Maloney company. If in fact the cost will exceed the amount to be recovered of Moriarty and his surety, we must assume that the board will take measures to meet the difficulty, either by terminating the contract under the five-day clause contained therein, or by obtaining, if practicable,

increased appropriations. We cannot assume that they will incur expense in excess of the appropriations.

We find nothing arbitrary or unreasonable in the action of the board. The fact that Moriarty had twice within six weeks pleaded guilty to violations of contract, was sufficient to justify the board in finding that his work was not satisfactorily performed.

The writ must be dismissed, with costs.