Hillsborough,
Feb. 3, 1920.

### ALBERT L. CLOUGH & a. v. MOISE VERRETTE & a.

Equity may restrain the unlawful appropriation of public funds by municipal corporations and their officers.

Though a board of mayor and aldermen has no power to make a gift to a contractor as a mere gratuity or under the guise of a compromise of an entirely unfounded claim, it has power to adjust in good faith a doubtful controversy between him and the city and to pay his claim, if it is founded in justice and supported by a moral obligation, although it may not be legally enforceable.

Though equity may restrain the unlawful or unauthorized acts of municipal officers it has no authority to enjoin them from doing what the law authorizes them to do.

BILL IN EQUITY, by certain taxpayers of Manchester against the mayor and treasurer of the city and one Laflamme to enjoin the payment of Laflamme's claim against the city, which on December 17, 1918, the board of mayor and aldermen of the city had voted to pay.

The complainants are members of said board and voted against the payment of the claim. The bill alleged that in 1914 the city proposed to build an addition to its police station and duly advertised for proposals for furnishing labor and materials for the same

according to certain specifications; that Laflamme in August, 1914, duly submitted a bid in accordance with said advertisement and filed therewith a certified check for one thousand dollars as security for the performance of his bid if the same should be accepted; that said bid was accepted by the city but Laflamme refused to carry out the same; that the claim of Laflamme for $1000, the payment of which the plaintiffs seek to enjoin, was for the return to him of the $1000 deposited by him as security.

The defendants in answering the bill alleged that Laflamme's bid was made in reliance upon figures as to the cost of material and labor required, furnished him by direction of the chairman of the committee of the aldermen having in charge the building proposed; that after the acceptance of his bid Laflamme ascertained that the figures so furnished upon which he had relied in making his bid were incorrect to the amount of over $2000; that he so notified the city and offered to do the work and furnish the material required if the city would pay the difference between said figures and the actual cost of material; that the city refused so to do and ever since Laflamme has endeavored to secure the return to him of said $1000.

The answer further alleged that the claim of Laflamme was one as to which there was an honest dispute and that in the exercise of a sound discretion the board of mayor and aldermen voted to pay the same and that their action was not subject to control or revision by the court.

The plaintiffs demurred to the answer; the court sustained the demurrer as to the last allegation of the answer but overruled it otherwise, holding however that if Laflamme's claim proved invalid the plaintiffs were entitled to an injunction. To the order and ruling Laflamme excepted.

Transferred by *Allen*, J., from the January term, 1919, of the superior court.

*Taggart, Tuttle, Wyman & Starr (Mr. Wyman* orally), for the plaintiffs.

*Thomas H. Madigan, Jr., Irving E. Forbes* and *Warren, Howe & Wilson (Mr. Howe* orally), for the defendants.

PARSONS, C. J. When in August, 1914, Laflamme refused to carry out his bid except upon promise of additional payment, the city could have agreed to his proposition and contracted on the basis

proposed by him. *Meech* v. *Buffalo*, 29 N. Y. 198. This was not done and Laflamme has ever since endeavored to get the city to pay back the money which he had deposited as security. In December, 1918, the board of mayor and aldermen voted to pay him the face of his claim. These facts permit the inference that payment was ordered in compromise of a disputed claim. The plaintiffs having been outvoted as aldermen, now as taxpayers seek to enjoin the settlement voted by the board. While a municipality may not make a gift under the guise of a compromise of an entirely unfounded claim, its power to compromise a claim without reference to its utlimate validity is undoubted. *Kinsley* v. *Norris*, 62 N. H. 652; *Portsmouth* v. *Bank*, 76 N. H. 577; *Wells* v. *Putnam*, 169 Mass. 226. "The general power to compromise doubtful and disputed claims is necessarily incident to the power to sue and the liability to be sued. If a claim against the defendant cannot be adjusted by way of compromise, neither could a claim in its favor. If this doctrine were applied generally to all claims, the result would be that in all disputed cases the defendant must perforce engage in a litigation, the expense of which would be certain, but the result doubtful. The defendant would be under the necessity of insisting at all hazards upon a judicial determination of all its controverted rights, and would be bound to pursue or resist all doubtful claims until final adjudication by the court of last resort." *Prout* v. *District*, 154 Mass. 450, 451. "The trustees of the town . . . may compromise doubtful controversies, to which the corporation is ·a party, either as plaintiff or defendant. The law vests them with a discretion in such matters, which they are to exercise for the best interests of the corporation. A settlement of an existing controversy, if made in good faith, binds the corporation; but if collusively made, it is not obligatory." *Petersburg* v. *Mappin*, 14 Ill. 193, 194; s. c. 56 Am. Dec. 501.

But if Laflamme's claim for the return of his deposit, denied by the city for over four years, is not properly entitled a doubtful controversy, it does not follow the vote of the board of aldermen was beyond their power. If Laflamme established, as he might under the pleadings, the city's responsibility for his mistake, his claim would have a legal foundation and the vote would be not merely within the legal power of the board but an execution of its legal duty. If the legal responsibility of the city for the mistake was not proved, the city is not legally bound to take advantage of Laflamme's error. Apparently the city lost nothing except an opportunity to secure its

improvements for less than their cost. Upon trial, Laflamme's claim, if not legally recoverable against the city, may prove meritorious and present a situation in which the city's retention of the money would be merely claiming the advantage of a technicality which honorable men would hesitate to take. A municipal corporation in the absence of peremptory statute is not obliged to place itself in this position. A meritorious consideration will authorize a payment by such corporation of a claim not legally enforceable. *Friend* v. *Gilbert*, 108 Mass. 408. Even constitutional provisions prohibiting the making of gifts by municipal corporations, it is held, do not prevent the payment by them of claims founded in justice and supported by moral obligations only. 5 McQuillin Mun. Corp. s. 2168; *People* v. *Prendergast*, 202 N. Y. 188; *Matter of Borup*, 182 N. Y. 222. The board of mayor and aldermen of Manchester have all the powers of the corporation in relation to the matter in hand. Laws 1915, c. 249; P. S., c. 50, s. 1; Laws 1846, c. 384, s. 14; *Blood* v. *Company*, 68 N. H. 340, 341. "Councils it is true are trustees and the law limits their expenditure of public money to public purposes, but they are also representatives of their constituents, and delegates of the city's legislative powers, and there is nothing in the law or in sound public policy to prohibit the city from being honest, and paying its *bona fide* debts which are good in conscience and justice, though for sufficient other reasons there is a general rule which prevents them from being enforceable by law." *Bailey* v. *Philadelphia*, 167 Pa. St. 569, 573; s. c. 46 Am. St. Rep. 691.

The court has power by injunction to restrain the unlawful appropriation of public funds by municipal corporations and their officers. *Sherburne* v. *Portsmouth*, 72 N. H. 539; *Blood* v. *Company*, 68 N. H. 340. But although the court may restrain the unlawful or unauthorized acts of municipal officers, it has no authority to enjoin them from doing what the law authorizes them to do. *Cox* v. *Jones*, 73 N. H. 504.

The aldermen as representatives of the city had no power to make a gift as a mere gratuity to Laflamme, but they had power in good faith to adjust a doubtful controversy between him and the city and to pay his claim, if founded in justice although not legally enforceable. When the contract is invalid but in equity and good conscience the claim ought to be paid a refusal to enjoin is proper. *Farmer* v. *St. Paul*, 65 Minn. 176.

The legal questions understood to be in controversy have been considered despite the informalities of the record. The orders made

so far as they conflict with the foregoing are set aside, and the exception sustained.

*Case discharged.*

All concurred.