[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 607 
This is a zoning case submitted to the court under Rule
3:81-2. On June 16, 1948 Justice Joseph L. Bodine allowed a writ of certiorari in the New Jersey Supreme Court. A rule to show cause previously had been issued; depositions were taken by all the parties, which are voluminous and also there is an exceptionally large number of exhibits. This record, by stipulation at the time of the pretrial of this case, is submitted to the Court as constituting the record in the instant action.
The Court has considered the depositions and after a pretrial a further deposition was taken, as well as the several exhibits, briefs of counsel and all argument relating to the questions presented.
Many of the facts are undisputed. The plaintiffs are property owners and taxpayers of the Town of Bloomfield. Four of the plaintiffs own one-family residences on the south side of upper Broad Street, practically opposite the property in question; the other plaintiff owns a one-family residence south a few doors on Erwin Place from upper Broad Street. The plaintiff, Dr. Anderson, not only maintains his residence in his home at 1310 Broad Street but also conducts the practice *Page 608 
of medicine at that address. All of the plaintiffs' properties are in Block 1172 of the Tax Map of the Town of Bloomfield. Their properties lie within the small volume residential zone A as established under the zoning ordinance of the Town of Bloomfield, adopted November 17, 1930 and the amendments thereto.
Mr. John Hyde and G. Sidney Hyde, owned a tract of land designated on the Tax Maps of the Town of Bloomfield as Lots 9, 90 and 100 in Block 1231 except for a portion of Lot 9, hereinafter referred to, which said portion they conveyed to the defendant, Newark Theatre Building Corporation by deed dated April 10, 1948. All of the Hyde's property prior to April 5, 1948, including the portion conveyed to the Newark Theatre Building Corporation, lay within the small volume residential zone A and opposite the lands of the plaintiffs. Small volume residential zone A does not permit the use of property included therein for the purpose of theatres, stores and parking spaces.
On April 5, 1948 the defendant the Mayor and Town Council of the Town of Bloomfield adopted an ordinance amending this Zoning Ordinance heretofore adopted on May 1930 and subsequently amended twice, providing in the amendment of April 5, 1948 for the inclusion of a portion of Lot 9 conveyed by the Hydes to the defendant Newark Theatre Building Corporation in a medium volume business zone. This ordinance of April 5, 1948 does not change the classification of any other land except that directly conveyed to the Theatre Corporation. Uses permitted in the medium volume business zone includes among other things, "retail store, retail bakery, office, business or vocational school, bank, billiard room, gymnasium, undertaking establishment, bowling alley, miniature golf course, tailor shop, shoe shop, hand laundry, barber shop, beauty parlor, carpenter shop, stone or monumental works, tinsmith, plumbing shop, and automobile salesroom, theatre and parking lot for automobiles."
The plaintiffs claim that the amendment of April 5, 1948 aforesaid has caused a decrease in the value of their properties. The plaintiffs further contend that the action of the *Page 609 
defendant the Mayor and Town Council of the Town of Bloomfield, in adopting the ordinance of amendment of April 5, 1948 was unreasonable, arbitrary and illegal and that the said ordinance is illegal and void. The plaintiffs ask in this suit that the ordinance of April 5, 1948 adopted by the defendant, the Mayor and Town Council of the Town of Bloomfield be set aside.
The defendant Newark Theatre Building Corporation acquired the property in question from the Hydes by a deed dated April 10, 1948. This property was located in what is known as the Brookdale section of Bloomfield, which is a comparatively new section, rapidly developing, with the number of residences increasing with the construction of new one-family homes and garden type apartments.
The property in question was part of a tract of 32.34 acres of vacant land owned by John Hyde and G. Sidney Hyde and by their families since 1891. It was formerly farm land used for pasture. A part of the property in question had for some years been used as a golf driving range. There was a small building used in connection with the business of the golf range as well as a parking place off the street for the cars of customers of the range to park.
The Newark Theatre Building Corporation desired to buy a part of this tract for a theatre, stores and parking space. The contract was entered into between the Hydes and the theatre corporation on December 8, 1947. It carried a provision for cancellation in the event the seller did not succeed in having the tract rezoned.
The matter was presented to the Town Council of the Town of Bloomfield. On March 15, 1948 an ordinance was introduced for the purpose of placing the tract in a business zone. April 5, 1948 the city fathers held a public hearing on the ordinance and unanimously adopted it, despite vigorous protest presented at the said hearing.
On April 10, 1948 the Hydes, as I have already said, conveyed the tract rezoned to the Newark Theatre Building Corporation; a medium volume business zone was constituted at the intersection of Broad Street and West Passaic Avenue, *Page 610 
Bloomfield by an original zoning ordinance of November 17, 1930, amendment of April 5, 1948 to said ordinance is now under attack.
This intersection is a business zone like you find in any growing new community. You will find here approximately sixteen stores, with a barber shop, two beauty parlors, one hardware store, one luncheonette, two dry cleaners, one drug store, two food stores and two delicatessens, one dry goods store and one stationery store and two gasoline stations, a branch of the Bloomfield Savings Bank and a branch of the Bloomfield post office.
On the upper Broad Street boundary of the business section, on the south side of the street, is Erwin Place, which is the first block beyond the aforesaid intersection. Prior to April 5, 1948 the boundary of the business section on the north side of upper Broad Street was the easterly line of Erwin Place extended across Broad Street westerly. Beyond Erwin Place on the south side of upper Broad Street is a small volume residential zone A. Here on the south side we find the properties, as I have heretofore stated, of four of the plaintiffs.
On the opposite side of upper Broad Street, that is the north side from the line of Erwin Place and including the property rezoned by the ordinance of April 5, 1948 for a distance of 1,000 feet or more, the land is vacant except for one old residence opposite Mountain Avenue. You will also find, at the westerly end of this block, on the north side, a building used for the sale of ice cream and refreshments and soft drinks as well as an Antique shop and across the street where Bellevue Avenue enters West Broad Street there is a gasoline service station.
The old Morris Canal bed and the Third River are in the rear part of this tract, as well as part of a golf course.
The Hyde property is adjacent to and abuts the business district as laid out on the original zoning ordinance of November 17, 1930. Of course, the Hyde tract at that time, as I stated, was classified as small volume residential zone property. The presence of the river and the brook present a drainage problem connected with the Hyde tract. *Page 611 
A comparison of the contract of sale and the ordinance of April 5, 1948 shows that the description of the tract rezoned and the ordinance is identical with the description of the property conveyed by the Hydes to the Newark Theatre Building Corporation.
The matter was referred and passed upon directly by the Town Counsel and at no time was referred to or considered by the Board of Adjustment.
The amendment to the ordinance on November 17, 1930 re-zoned the tract of land which was the subject of the contract between the Hydes and the Theatre Corporation. The remaining part of the Hyde tract remained a small volume residential zone A property. This amendment of April 5, 1948 to the original ordinance of November 17, 1930 was unanimously adopted by the governing body or the legislative body of the Town of Bloomfield. It enlarged the medium volume business zone, as heretofore existed.
The Hydes proffered the most northerly fifty feet of this property and offered to dedicate same as a public street. The property in question had been used for business purposes, as stated above, from 1929 until the advent of World War II. Naturally, as the number of people living in this part of the Town of Bloomfield increased, necessarily additional facilities for furnishing an opportunity to enjoy the things of life must be afforded, which necessarily result in having a business section growing from the normal demand from the people who require to be served. The city fathers must foster and encourage owners of property to make it available for use necessary to the community.
The plaintiffs attack the ordinance of April 5, 1948 charging that it is unreasonable, and arbitrary in that it converts a small tract of land from small volume residential zone A to medium volume business zone.
Another ground the plaintiffs urge is that the said amended ordinance authorizes a variance from the provisions of the zoning ordinance without a determination or recommendation by the Board of Adjustment as required by statute. *Page 612 
It further urges that the town fathers did not consider any comprehensive plan in adopting this amendment.
It also urges other grounds in its attempt to set aside the amended ordinance aforesaid.
There is a clear distinction between a variance and an amendment. The ordinance in question is an amended ordinance. It is elemental and conceded by the plaintiffs that the Mayor and the Town Council of the Town of Bloomfield had the jurisdictional power and the right, in the exercise of their legislative functions, to amend or even repeal an ordinance of their Body.
The Court has had occasion to personally inspect the property in question and from that inspection alone one would have to reach just one conclusion, taking into consideration, of course, an observation and inspection of the entire surrounding properties.
Government is for the benefit of the larger number affected and not for the few. The exercise of this governmental function by the legislative body of Bloomfield clearly indicates that it was adopted with that fundamental principle of government in mind. It is equally elemental that the burden rests upon the plaintiff, like in all cases, to prove and establish its case by a fair preponderance of the evidence, that is by the greater weight of the evidence and to offer clear and convincing proof preponderating in their favor that the ordinance is unreasonable, arbitrary and capricious.
As further evidence of the growth of this particular area you will find five new churches, three new schools in addition to the existing school, have recently been erected and a new school is about to be built. A branch of one of the large Bloomfield banks is located directly opposite the rezoned property. A new post office is there, and new stores have been built and the bank is about to erect in the immediate vicinity a new home to house its interests.
The Minutes of the Town Council at the time of the adoption of the amended ordinance of April 5, 1948 suggest that all of these factors were considered by it. *Page 613 
The amended ordinance terminated the change at a point in the boundary line of the business district and the proffered dedicated street. The ordinance does not state that the property included in the amendment, that is the medium volume business zone, is for the purpose merely of an erection of a building of a theatre, stores and parking lots; it is not so restricted. There may be built any of the many, many structures or buildings permitted to be erected in a medium volume business zone, not necessarily a theatre, stores and parking lot.
It is clear, so it seems to this Court, that the amendment in question was merely a further carrying out of the comprehensive plan as originally created and adopted by the ordinance of November 17, 1930. It does not create a business zone surrounded by residences; there are no residences on either side, nor are there any contemplated to be constructed there. The cost of preparing the property for construction of residences is almost prohibitive. The comprehensiveness of the plan as evidenced by the original zoning ordinance of November 17, 1930 is established. This is merely an addition thereto in carrying out the said comprehensive plan. It certainly cannot be said that in any way it is a variance as that term is understood, therefore, it was proper that the Mayor and Town Council should consider and pass upon the question and not necessarily by statute did it have to first be referred to the Board of Adjustment.
I assume that the statute of 1948 is not urged by the plaintiff, as it certainly has no application to the question here under consideration, as the statute was adopted in July, 1948, after, of course, the ordinance was approved.
This amendment changed the boundary of the medium volume business zone; it did not create a variance. The city fathers did what they were legally authorized to do. I believe that the ordinance was a reasonable and proper exercise of the municipal zoning power.
The suggested proposed Route 4 of the State highway at the time of the adoption of this amendment on April 5, 1948, clearly discloses that a large part of the then existing properties included in a business zone would be necessarily used in the *Page 614 
construction of the proposed Route 4 Highway. The business property added by the amendment does not add any additional business property to the general locale in the light of the loss of business property which would be caused by the construction of the proposed Route 4 Highway.
The evidence suggested that at the present time there are approximately 900 units of homes in this district and that in the future a large number of homes and garden apartments will be constructed in the general neighborhood. This will require additional services to be made available to those people and residents of that area.
The depositions clearly disclose that there is a strong difference of opinion as between the contentions of the plaintiffs and the defendants. It is a question of opinion as to what is the best appropriate use the land in question can be put to. As against the diversity of opinion we have the positive action of the governing body of Bloomfield.
I cannot find that the amended ordinance in any way creates a "wedge" into the residential section but rather it is simply an extension of a comprehensive plan for the business growth of the vicinity.
In a recent opinion in the case of Duffcon Concrete Products,Inc., Corp. v. Borough of Cresskill, in the Supreme Court ofNew Jersey, 1 N.J. 509, (1949), Mr. Chief Justice Vanderbilt speaking for that Court said, among other things, "ButR.S. 40:55-32, which goes to the heart of the zoning legislation discloses very clearly the contrary intent of the Legislature. `Such regulations shall be in accordance with the comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulation shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouragingthe most appropriate use of land throughout such municipality.' *Page 615 
"What may be the most appropriate use of any particular property depends not only on all the conditions, physical, economic and social, prevailing within the municipality and its needs, present and reasonably prospective, but also on the nature of the entire region in which the municipality is located and the use to which the land in that region has been or may be put most advantageously. The effective development of a region should not and cannot be made to depend upon the advantageous location of municipal boundaries, often prescribed decades or even centuries ago, and based in many instances on considerations of geography, of commerce, or of politics that are no longer significant with respect to zoning. The direction of growth of residential areas on the one hand and of industrial concentration on the other refuses to be governed by such artificial lines. Changes in methods of transportation as well as in living conditions have served only to accentuate the unreality in dealing with zoning problems on the basis of the territorial limits of a municipality. Improved highways and new transportation facilities have made possible the concentration of industry at places best suited to its development to a degree not contemplated in the earlier stages of zoning. The same forces make practicable the presently existing and currently developing suburban and rural sections given over solely to residential purposes and local retail business services coextensive with the needs of the community. The resulting advantages enure alike to industry and residential properties and, at the same time, advance the general welfare of the entire region."
It seems to me that the instant case is well within the pronouncement above-referred to. Mr. Justice Bodine in a case decided July 30, 1945, Ingannamort v. Fair Lawn, 133 N.J.L. 194, quoted from the unreported case of Peoples Trust Company ofBergen County v. Township of Teaneck and William Walter Phelps,Inc., v. Township of Teaneck at 133 N.J.L. 195 as follows, "Manifestly the prosecutors' properties are in an area much more devoted to business than to residential use. The municipality cannot lift them out of a natural use merely because its experts think it would be better so to do. It has no *Page 616 
power to close its eyes to the existing use and say it would be better otherwise."
It is clear that these plaintiffs have failed to offer clear and convincing evidence, that is the greater weight of the evidence, the fair preponderance of the evidence weighing in their favor, that this amended ordinance is unreasonable, arbitrary or capricious.
It is interesting to note that both sides rely largely onAppley v. Bernards Township, 128 N.J.L. 195, as well as the case of Brandon v. Town of Montclair, 124 N.J.L. 135. I think the latter case clearly holds that the legislative body, the defendant municipality herein, has the power to do as it did. The Court in that case said, "The office of Board of Adjustment, as its title indicates, is adjustment to permit of reasonable use of individual plot where the general rule, because of special circumstances does not admit of such use — not alteration of boundaries. If the difficulty is common to lands in vicinity, by reason of arbitrary zoning, and is therefore of general rather than particular application, the remedy lies with local legislative body or in the judicial process." The only legislative body is the Mayor and Council, not the Board of Adjustment. By the amendment of this ordinance it changed the boundaries which was within its power and jurisdiction and right.
We simply have on the one hand the opinion and judgment of the experts for the plaintiffs, differing with the expert and witnesses for the defendant upon the judgment exercised by the duly constituted and authorized legislative body of the Town itself. Its action was taken after serious consideration and deliberation. This Court certainly cannot replace or substitute its judgment for the judgment of a legislative body relating to a matter within its administration concerning the business of that town which was clearly its duty. Travis v. Borough ofHighlands, 136 N.J.L. 200 and 124 N.J.L. 472.
I have already indicated that the burden of establishing unreasonableness and capriciousness of the ordinance rests on the plaintiffs. Crow v. Westfield, 136 N.J.L. 363. "The presumption of reasonableness of the action of the Council in enacting *Page 617 
an ordinance has not been met." Durrwachter et al. v. Borough ofFair Lawn, 136 N.J.L. 314. This presumption the plaintiffs have not overcome.
The Court also considered the case of Plass v. Town ofBloomfield, 134 N.J.L. 580. This action was decided November 12, 1946 and Mr. Justice Joseph Bodine, speaking for the Supreme Court said at page 581, "We can find no evidence overcoming the presumption of validity." Gurland v. Town of Kearny,128 N.J.L. 22. Brandon v. Town of Montclair, supra, affirmed125 N.J.L. 367. Repp v. Shahadi, 132 N.J.L. 24. "If it was necessary, we might find the amendment was reasonably exercised and the zoning necessary for the needs of the defendant and a change in the ordinance was effected on R.S. 40:55-35. We can find no basis for setting aside the ordinance, as amended, the action taken thereon will be affirmed."
R.S. 40:55-35 provides, "Such regulations, limitations, and restrictions may be amended, changed, modified, or repealed, and the boundaries of such districts may be changed, by ordinance". This is what the defendant town did in the adoption of the amending ordinance of April 5, 1948. See also Ridgewood Air Clubv. Board of Adjustment of Village of Ridgewood, 136 N.J.L. 222, (Sup.Ct. 1947) and Eastern Boulevard Corp. v.Willaredt, 123 N.J.L. 269 (E. A. 1939).
From a consideration of all the evidence, the depositions, exhibits, briefs and arguments of counsel, as previously stated, this Court concludes that the plaintiffs have not successfully carried the burden of proof. Under such circumstances the action of the legislative body must prevail as being reasonable and valid. As I have previously stated it is definite that this Court cannot substitute its judgment for the judgment of a legislative body. See Zahn v. Board of Public Works, 274 U.S. 325
(1927). This rule is also referred to in Duffcon ConcreteProducts, Inc., a corporation v. Borough of Cresskill, supra
and Euclid v. Ambler Realty Company, (1926), 272 U.S. 365,47 S.Ct. 114, 71 L.Ed. 303, one of the leading cases dealing with the constitutional aspect of zoning.
"Building zone laws are of modern origin. They began in this country about 25 years ago. Until recent years, urban life *Page 618 
was comparatively simple; but, with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for, while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise. * * *
"`If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the Courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot — not the courts.'" See also Appley v. Bernard Township, supra and Salisbury v.Ridgefield, 137 N.J.L. 515 (Sup.Ct. 1948).
Therefore, for the reasons stated and from a consideration of the record submitted to this Court, I can find no basis for setting aside the ordinance as amended, and the action taken therefore is affirmed.
Counsel may submit an order accordingly, as the Court finds in favor of the defendant and against the plaintiffs, with costs. *Page 619