36 N.J. Super. 74 (1955)
114 A.2d 761
LEO P. CARLIN, PLAINTIFF,
v.
THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, BENJAMIN A. LEVINE AND FLOYD LIEBOWITZ, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 27, 1955.
*78 Mr. Richard L. Amster, attorney for plaintiff.
Mr. Vincent P. Torppey, attorney for defendant City of Newark.
Mr. Harold Krieger, attorney for defendants and cross-claimants Benjamin A. Levine and Floyd Liebowitz.
EWART, J.S.C.
By this suit in lieu of a prerogative writ Mayor Carlin of the City of Newark, not in his capacity as a city official but as a citizen, property owner and taxpayer of the city, attacks and seeks to have the court invalidate and set aside a resolution adopted by the old city commission on June 30, 1954 by the terms whereof the city authorized the return to the defendant Schreiber of the sum of $35,000 deposited by the latter with the city clerk on March 17, 1954 in connection with Schreiber's offer to purchase from the city a block of land opposite the Pennsylvania Railroad Station at a price of $350,000. And the plaintiff further seeks a judgment forfeiting any claim of the individual defendants in and to the said fund of $35,000 and in and to the lands mentioned.
*79 The facts essential to a determination of this controversy I find to be as follows: On and prior to March 17, 1954 the City of Newark owned the entire block of land opposite the Pennsylvania Railroad Station bounded by Raymond Boulevard, McCarter Highway, Commerce Street and Raymond Plaza West, which land is operated as a parking facility by a lessee of the city. On the morning of that date defendant Schreiber, through his partner Mr. Lancaster, submitted to the city clerk a letter by which Mr. Schreiber offered to purchase from the city the aforesaid property, subject to the rights of the Public Service Coordinated Transport which operates a subway beneath a portion of the land, for the sum of $350,000 payable in cash, and the letter incorporates certain terms and conditions, viz.: (1) that title should be conveyed by bargain and sale deed but should be a marketable title that would be guaranteed by a reputable title insurance company; (2) that the purchaser would construct a brick and concrete building three stories in height above the ground to cost approximately $2,000,000, with provision for stores on the ground floor, offices on the second floor and a convention hall on the third floor with a seating capacity for 5,000 people, together with parking facilities in the basement and on the roof of the building to accommodate approximately 750 cars. A copy of a drawing of the proposed structure was submitted with the letter; (3) that the structure to be erected would comply with the set-back rules of the City of Newark and the plans and specifications for the proposed building would be submitted to the proper city officials and would be subject to their approval; (4) that any reasonable conditions imposed by the city to guarantee the safety of the subway would be complied with; (5) that until construction of the building should commence, the buyer would have the right to utilize the area for public parking; (6) that construction of the proposed building would start within one year from the date of passing title and would be completed within approximately two years thereafter. As evidence of good faith the letter was accompanied by a bank cashier's check to the order of the city for $35,000, representing 10% of the *80 amount of the offer. And the letter stated that it was understood the sale was being made pursuant to the requirements of N.J.S.A. 40:60-26(c); that the offer was being submitted to the city commission for approval as provided in the statute and that unless the offer were approved on that day there was no assurance that the offer would be repeated.
Upon submission of the offer, a rather lengthy discussion ensued between the members of the city commission, Attorney Lancaster, Mr. Belfatto, the corporation counsel, and a Mr. Spiegel, another prospective bidder for the property, included in which discussion was the subject of a penalty clause whereby the purchaser of the property would suffer certain penalties if he failed to erect the building as described within the period mentioned. That meeting was apparently held during the morning of March 17, 1954. It finally ended with an understanding that Mr. Lancaster, representing the purchaser, and Corporation Counsel Belfatto, representing the city, would collaborate in the preparation of a resolution to be adopted by the city commissioners and present the same for consideration by the city commission at 2 o'clock that afternoon.
At the city commission meeting starting at 2:00 P.M. on March 17, 1954 a resolution, apparently the joint product of Messrs. Belfatto and Lancaster, was presented to the commissioners for consideration. The resolution as prepared did not contain any penalty clause referred to above, but it was suggested that the resolution be adopted on that day as the first step looking to a sale of the property as provided by the statute and that penalty clauses could be prepared prior to the next meeting at which the matter would be taken up for further consideration. Accordingly, there was introduced at the commission meeting on the afternoon of March 17, 1954 and unanimously adopted on roll call vote, a resolution which recited the fact of ownership of said premises by the city; the fact that it was intended to offer the property for sale because it was not needed for the public use, pursuant to the provisions of N.J.S.A. 40:60-26(c); a particular description by metes and bounds of the property is included in the *81 resolution; the terms of the offer incorporated in Mr. Schreiber's letter referred to above were recited; the terms of the section of the statute above cited were set forth in recitals in the resolution; and it was formally resolved that the said property was owned by the city and was not needed for public use; that the offer as contained in Mr. Schreiber's letter, upon the terms and conditions set forth, was approved but subject to final approval at the next meeting of the board of commissioners to be held March 31, 1954, and subject to the conditions and requirements of the said statute; that title should be conveyed by bargain and sale deed containing the reservations and restrictions recited in the offer; directing the Director of the Department of Public Parks and Property to cause publication of the aforesaid offer and approval to be made in the manner prescribed by the statute, with notice that the matter would be further considered at the next meeting of the commissioners to be held March 31, 1954; that in the event of final approval and acceptance of the aforesaid offer at the meeting to be held March 31, 1954 title should close and the balance of the purchase price should be paid and deed delivered within 60 days thereafter; that in the event of a rejection by the board of commissioners at the meeting to be held March 31, 1954 of the said offer of Mr. Schreiber, then said deposit of $35,000 should be forthwith returned to him; and that any offer which might be submitted by others at the meeting of March 31, 1954 must be accompanied by deposit of not less than 10% of the amount of such offer.
Notice of the offer submitted by Mr. Schreiber and of the various terms and conditions contained therein, together with a description of the property, was duly published in the Newark Star-Ledger on March 25, 1954, which publication contained notice that said offer of Mr. Schreiber and any other offer of a higher price or better terms would be considered and accepted or rejected pursuant to the statute at the next regular meeting of the board of commissioners to be held in the Council Chambers, City Hall, at 2 P.M. on March 31, 1954.
*82 At the meeting of the city commissioners held March 31, 1954 the city clerk brought up the question of the sale of said property and Mr. Schreiber's bid of $350,000 therefor; invited any one present to make additional offers for the property; no additional offers were submitted, but Mr. Schreiber, in whose name the original bid was submitted, appeared and stated that his clients had received information disclosing that there might be quicksand beneath the surface of the lands in question and requested that consideration of the matter be postponed for two weeks to enable his clients to make further investigation with respect to the condition of the sub-soil of said premises; after a discussion participated in by Mayor Carlin, Corporation Counsel Belfatto, and Mr. Schreiber, the request for a continuance was refused, whereupon Mr. Schreiber stated:
"We withdraw our offer before there has been any formal acceptance."
Again there was some further discussion and Mr. Schreiber again stated:
"Then I withdraw the offer. I withdraw the offer formally."
Prior to the attempted withdrawal of the offer by Mr. Schreiber as above set forth, Mayor Carlin called attention that at the time of the adoption of the resolution on March 17 there was left open the question of the preparation of a penalty clause and the following dialogue ensued:
"Mayor Carlin: Now the Law Department has corrected that resolution so that the penalty clause has been inserted. Has that been done?
Mr. Belfatto: That is right.
Mayor Carlin: So that as far as we are concerned we have no further consideration. We have to either accept or reject your offer."
Immediately following the attempted withdrawal of the offer by Mr. Schreiber, Commissioner Bontempo inquired whether the matter was ready for action; Mayor Carlin *83 inquired whether there were any further bidders, to which inquiry there was no response, and the following action was taken as shown by the minutes of the said meeting of March 31, 1954:
"Commissioner Bontempo: I move its approval.
Mayor Carlin: Motion has been made that the offer of $350,000 for the property as outlined in the resolution be accepted.
Mr. Schreiber: I want to point out one other thing, that this resolution, if adopted by the Commission, does not conform in toto with the offer that was made in writing to the Commission.
Mr. Belfatto: We think it does.
Mayor Carlin: The Corporation Counsel is of the opinion that it does.
Mr. Belfatto: He was there when we drew this up.
Mayor Carlin: You heard the motion. The Clerk will call the roll.
Yeas: Commissioners Bontempo, Franklin, Keenan, Mayor Carlin."
Notwithstanding the references to be found in the minutes of the meeting of March 17 and again in the minutes of the meeting of March 31, 1954, I find as a fact that the so-called penalty clauses by which the prospective purchaser would be penalized if he failed to construct the building as described and failed to complete it within the time specified, were not incorporated in the resolution adopted March 17, 1954, nor in the advertisement published in the Newark Star-Ledger; nor was it contained in the motion on March 31, 1954 finally approving the offer, nor were such penalty clauses in fact ever drawn or agreed upon between the city and the prospective purchaser.
At a meeting of the board of commissioners held June 9, 1954 Joseph A. Hayden, Esquire, of the firm of Clancy & Hayden, appeared as attorney for defendants Levine and Liebowitz, for whom Mr. Schreiber was acting in having submitted the original bid; called to the attention of the commission that the original bid had been withdrawn by Mr. Schreiber before its formal acceptance on March 31, 1954; and requested a return of the $35,000 deposit. After a discussion the matter was referred to the City Law Department.
*84 At a meeting of the city commission held June 23, 1954 Attorney Hayden again appeared and renewed his request for a return of the $35,000 deposit; Corporation Counsel Belfatto reported that he found there was no valid binding contract because the offer had been withdrawn before final acceptance and expressed the opinion that the deposit should be returned. After considerable discussion and argument, participated in by the city commissioners, the corporation counsel, and Attorney Hayden, decision on the question was deferred and Mayor Carlin requested an opinion in writing from the Law Department on the subject.
At a meeting of the city commission held June 30, 1954 Attorney Hayden again appeared with respect to his request for a return of the $35,000 deposit. Considerable discussion and argument ensued resulting in the introduction and passage of a resolution by the city commission finding that Mr. Schreiber was entitled to a return of the deposit and directing that a check for the return of the deposit be drawn and delivered to him, upon delivery of a proper release from him, the resolution reciting the opinion of the corporation counsel that the original offer was not irrevocable and the recommendation of the corporation counsel that the deposit be returned. Mayor Carlin voted against the resolution.
I further find that the resolution adopted by the city commission on March 17, 1954, tentatively accepting the offer of Schreiber but subject to final acceptance or rejection at the next meeting to be held March 31, 1954 as provided in the statute, contained terms and conditions substantially in accord with the original offer. While there are some slight variations between the terms of the original offer of Mr. Schreiber and the terms of the resolution adopting the offer, yet the resolution was the joint product of Attorney Lancaster (Mr. Schreiber's partner representing him at the meeting of March 17) and Mr. Belfatto, the corporation counsel, or at least they collaborated in its preparation; Mr. Lancaster was present at the time of the adoption of the resolution and made no objection to the terms thereof; and when Mr. Schreiber attended the meeting of the city commission on March 31 he *85 at first made no objection to the terms of the resolution but sought a two weeks' adjournment of the matter; then he attempted to withdraw the offer; and finally suggested that the original offer contained in the letter had never been accepted as such and that in effect the resolution was a counter-offer.
It is to be noted that neither in the original offer submitted by Schreiber nor in the resolution adopted by the city commission on March 17, 1954, nor in the advertisement published pursuant to the statute, will there be found any reference to or provision for a forfeiture of the $35,000 deposit in the event the bidder should fail or refuse to consummate the transaction after final acceptance by the city of the offer made.
Based on a written stipulation to the effect that defendant Schreiber, in submitting the aforesaid bid to the city for said lands, was acting as attorney and agent for his undisclosed principals, the defendants Levine and Liebowitz, and that he, Schreiber, had no beneficial interest in the fund on deposit or in the lands in question, a consent order was entered September 16, 1954 dismissing the suit as to the defendant Schreiber.
Defendants Levine and Liebowitz cross-claim against the city and seek a judgment for a return to them of the said deposit of $35,000.
The issues framed by the pretrial order entered in this cause October 29, 1954 are: (1) the standing of the plaintiff to prosecute this suit; (2) the right of the defendants to have withdrawn their offer prior to the adoption on March 31, 1954 of the motion and resolution accepting the offer and confirming the proposed sale; (3) interpretation of the statute, N.J.S.A. 40:60-26(c); (4) whether there was a meeting of the minds of the individual defendants, represented by Attorneys Schreiber and Lancaster, and the city on the terms of the contract or offer, including the penalty clause in the event of nonfulfillment by the prospective buyer; (5) whether there are any legal bases for the plaintiff's claim for the forfeiture of the $35,000 deposit to the city; *86 (6) whether the question of the penalty clause is not entirely irrelevant to the real issues involved in this suit; and (7) the validity of the resolution of June 30, 1954 by which the deposit of $35,000 was ordered to be returned to the bidder.
Based upon my findings of fact, I have reached the following conclusions of law in this case:
First: Plaintiff, as a citizen, resident and taxpayer of the City of Newark, has the undoubted right to prosecute this suit in the interest of the city and of the taxpayers. Middleton v. Robbins, 54 N.J.L. 566 (E. & A. 1892); Rehill v. Borough of East Newark, 73 N.J.L. 220 (Sup. Ct. 1906); Gimbel v. Peabody, 114 N.J.L. 574, at page 577 (Sup. Ct. 1935); Waszen v. Atlantic City, 1 N.J. 272, at page 276 (1949); Behnke v. New Jersey Highway Authority, 25 N.J. Super. 149, at page 158 (Ch. Div. 1953); Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72, at page 94 (1953); 18 McQuillin on Municipal Corporations (3rd ed), sec. 52.04.
Second: The statute (N.J.S.A. 40:60-26(c)) under which defendants submitted their offer for the lands owned by the city is silent as to whether such offer should be revocable prior to final acceptance by the city. However, the statute contemplates competitive bidding between the one making the original offer and any other persons interested in bidding for the lands, for which reason the statute requires public notice before acceptance of any offer, and the rule has been adopted in this State that, in the absence of equities justifying rescission or other equitable relief, a successful bidder on public work cannot arbitrarily withdraw his bid at any time before acceptance. Such a bid is held to be in the nature of an option giving the municipality a vested right of contract. Lupfer & Remick v. Board of Chosen Freeholders of Atlantic County, 87 N.J. Eq. 491 (Ch. 1917); Conduit & Foundation Corp. v. Atlantic City, 2 N.J. Super. 433 (Ch. Div. 1949).
And such appears to be the rule generally in other jurisdictions: Berkeley Unified School District v. James J. *87 Barnes Const. Co., 112 F. Supp. 396 (D.C. Cal. 1953); Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108 (1900); City of Baltimore v. J.L. Robinson Const. Co., 123 Md. 660, 91 A. 682, L.R.A. 1915A, 225 (Ct. App. 1914); City of Hattiesburg v. Cobb Bros. Const. Co., 183 Miss. 482, 184 So. 630 (Miss. Sup. Ct. 1938); Tunny v. City of Hastings, 121 Minn. 212, 141 N.W. 168 (Minn. Sup. Ct. 1913); 63 C.J.S., Municipal Corporations, § 1003, p. 578; 10 McQuillin, Municipal Corporations (3rd ed.), sec. 29.67.
True that the cases cited above all deal with competitive bids submitted for proposed public work and not with bids for purchase of lands owned by a municipality, but I can see no distinction in principle in the two classes of cases.
Nor is there anything in the statute cited making such an offer revocable or logically justifying the adoption of any different rule than that applied in the cases cited.
There being no equities shown in favor of the defendant bidders in the case at bar, such as existed in some of the cases above cited, I conclude that the offer submitted to the City of Newark for the lands mentioned was not revocable at the option of the defendant bidders and that the attempted oral withdrawal of the offer, after the city refused to postpone consideration of the matter at the meeting on March 31, 1954, was ineffective and of no avail to the defendants.
Third: The individual defendants contend there never was a valid binding contract between them and the City of Newark respecting said lands for the reason that there was no meeting of the minds of the contracting parties such as is requisite to the creation of a valid contract. Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526 (1953); ReStatement, Contracts, sec. 20, p. 25. In support of that contention, defendants assert, first, that the resolution adopted by the city on March 17, 1954 tentatively approving their offer contained terms and conditions not to be found in the original offer and, secondly, that it was contemplated and understood between the parties that there was to be inserted in the conditions of sale a clause by which the prospective *88 purchasers would be penalized in the event the offer was finally accepted but they should fail to erect the building described in their offer within the time limit named in the offer. In fact, defendants assert, the terms of such penalty clause never were agreed upon by the parties and are not to be found either in the original offer, nor in the notice published by the city, nor in the resolutions adopted by the city commissioners.
It is true that the parties discussed and contemplated the inclusion of such a penalty clause among the conditions of sale, but that in fact the terms of such penalty clause never were agreed upon, nor drawn, and no such penalty clause was included in any of the documents relating to the proposed sale.
And it is also true that while the resolution adopted by the city commissioners on March 17, 1954, tentatively approving and accepting the offer for said lands, contained terms and conditions substantially in accord with the original offer, yet there were some slight variations between the terms of the original offer and the terms of the resolution. However, the resolution adopted was the product of the joint efforts of Attorney Lancaster, representing the prospective purchasers, and of Corporation Counsel Belfatto, representing the city, or at least they collaborated in its preparation; Attorney Lancaster was present at the time of the adoption of the resolution and voiced no objection to its terms; and when Attorney Schreiber, representing the prospective purchasers, attended the meeting of the city commissioners on March 31, 1954, he at first made no objection to the terms and conditions contained in the approving resolution, but sought an adjournment of the matter pending a test of the sub-soil to ascertain whether quicksand was present, and it was only after his request for a two weeks' adjournment had been rejected that he attempted orally to withdraw the original offer and finally suggested that the resolution of March 17, 1954 had not accepted the offer as made but varied the terms of the offer and amounted not to an acceptance but to a counter-offer by the city.
*89 It must be conceded that to constitute a valid binding contract the proposal of the one party must be met by an unqualified acceptance by the other party and that the acceptance must correspond entirely with the essential terms contained in the proposal. A qualified or conditional acceptance containing terms and conditions not found in the original proposal may operate as a counter-offer but does not constitute an acceptance and does not result in the formation of a valid contract binding upon the parties. Lupfer & Remick v. Board of Chosen Freeholders of Atlantic County, 87 N.J. Eq. 491, at pages 494-495 (Ch. 1917); Larsen & Fish, Inc., v. Schultz, 5 N.J. Super. 403 (App. Div. 1949); Johnson & Johnson v. Charmley Drug Co., supra (1953); Trustees of First Presbyterian Church of Newark v. Howard Co. Jewelers, 12 N.J. 410 (1953); Peoples Drug Stores, Inc., v. Fenton Realty Corp., 191 Md. 489, 62 A.2d 273 (Md. Ct. App. 1948); 38 Am. Jur. 176-177, sec. 501.
In view of the circumstances under which the approving resolution was prepared, presented to the city commissioners and adopted on March 17, 1954, as above recited, I conclude that any slight variations between the terms and conditions contained in the resolution and the proposal contained in the original offer were consented to by the authorized representative (Attorney Lancaster) of the bidders, and that consequently there was no variation between the terms and conditions of the original offer and the terms and conditions of the approving resolution because the representative of the bidders consented to such slight changes or amendments as were made.
With respect to the penalty clause apparently contemplated by the parties and by which the successful bidders would have been penalized if they failed to erect the building described in their offer within the time limited in the offer, clearly such clause was for the protection and benefit of the city and would have constituted a burden upon and detriment to the successful bidders. Such a penalty clause would not have inured to the benefit of the bidders and they cannot be *90 heard to complain because the city failed to insist upon the inclusion of such penalty clause among the conditions of sale, which clause, if insisted upon by the city, would necessarily have to receive the assent of the bidders, to be effective.
In conclusion on this phase of the controversy, I conclude that the original offer, the approving resolution adopted by the city commissioners on March 17, 1954, and the action of the city commissioners at the meeting of March 31, 1954 in finally approving and accepting the offer, together constituted a contract, valid and binding upon the respective parties. Buckley v. Mayor, etc., of Jersey City, 105 N.J. Eq. 470 (Ch. 1930), affirmed 107 N.J. Eq. 137 (E. & A. 1930); Berkeley Unified School District v. James I. Barnes Const. Co., supra; 38 Am. Jur. 176-177, sec. 501.
Fourth: Plaintiff demands a judgment forfeiting to the City of Newark the $35,000 deposited with the city by the individual defendants at the time they originally made their offer for the lands in question (Exhibit 1), together with a forfeiture of any right, title or interest the individual defendants may claim to have in and to the lands in question.
As set forth in the original written offer made on behalf of the individual defendants (Exhibit 1), the defendants at the time of the submission of their offer deposited with the city the sum of $35,000 as evidence of their good faith.
Generally, the law regards penalties and forfeitures with disfavor; strictly construes contracts containing provisions for forfeitures; and, where possible, favors a construction which will avoid a forfeiture. Lupfer & Remick v. Board of Chosen Freeholders of Atlantic County, supra; 12 Am. Jur. 1015-1017, secs. 435 and 436; 3 Williston on Contracts, secs. 620 and 790; 3 Corbin on Contracts 115, sec. 552.
The facts and circumstances accompanying the deposit in question distinguish the case at bar from those cases where a municipality by public advertisement invites bids for the performance of public work, requires a deposit as security, and provides for a forfeiture or retention of the deposit by the municipality as liquidated damages if the successful *91 bidder refuses to execute the contract upon the award of the contract to him. See 5 Corbin on Contracts 349, sec. 1074. In the case at bar, the $35,000 deposit made as evidence of good faith was voluntary and not by virtue of any statute or public notice requiring the making of such deposit. Nor do the exhibits and proofs in this case reveal any stipulation or agreement between the individual defendants and the City of Newark providing for a forfeiture of said deposit in the event the defendants were the successful bidders but refused to consummate the transaction.
Under the circumstances here present, and in view of the fact that the City of Newark has not itself attempted to seize or forfeit the deposit, there is no principle of law or justice known to me that requires or would afford legal justification for a judgment of forfeiture such as the plaintiff seeks in this case.
Fifth: One of the issues suggested at the pretrial conference and set forth in the pretrial order was whether the question of a penalty clause is not entirely irrelevant to the real issues involved in this suit. The penalty clause there mentioned refers to the discussions between representatives of the bidders and of the city had at the meetings of the city commission on March 17 and March 31, 1954 which contemplated that there be inserted in the conditions of sale provisions for penalizing the successful bidders if they failed to erect the building described in their original offer within the time mentioned in said offer. In fact, as stated above, the terms of such a proposed penalty clause were never agreed upon and there was no such penalty clause ever inserted in the conditions of sale, or in the public advertisement, or in the resolutions adopted by the city commission.
The individual defendants are in no position to complain of the failure of the parties to agree upon such a penalty clause because had it been agreed upon and adopted as one of the conditions of sale, it would have inured to the benefit of the city and not to the benefit of the defendants. Nor has the plaintiff or the City of Newark made any point respecting the absence of such penalty provision or condition. Under *92 the circumstances, I think it must be said that the absence of such penalty clause is immaterial and irrelevant to the issues in this suit.
Sixth: After discussion at meetings of the city commissioners held June 9, June 23 and June 30 the city commissioners, on the advice of corporation counsel, adopted a resolution on June 30 authorizing and directing the return of the $35,000 deposit to the depositor upon receipt of duly executed releases discharging the city from any further obligation with respect to sale of the lands in question.
The plaintiff, who alone voted in the negative, attacks the validity of the resolution for the return of the deposit on the grounds that the title to the fund had become vested in the city and the return of the deposit amounted to a give-away of public funds and rights without adequate consideration.
True, it has been held repeatedly that a municipality may not make a gift of public monies and assets, nor grant releases from the obligation to pay present or future taxes or license fees, under the guise of compromising an entirely unfounded claim against the municipality, or otherwise. Jersey City v. North Jersey St. Railway Co., 78 N.J.L. 72 (Sup. Ct. 1909); Jamouneau v. Local Government Board, 6 N.J. 281 (1951); Spoerl v. Pennsauken Township, 14 N.J. 186 (1954); Clough v. Verrette, 9 N.H. 356, 109 A. 78 (N.H. Sup. Ct. 1920). However, that rule has no applicability to the case at bar for the reason that title to the fund was not vested in the City of Newark. The city merely held the fund in escrow or in trust, to be returned to the depositors if their offer had not been accepted or to be applied on the purchase price if their offer had been accepted and the transaction consummated. Not having title to the fund in question, it cannot be said that the resolution authorizing the return of the fund (deposit) amounted to a give-away of public assets or property.
On the other hand, a municipal corporation having the power to make a contract may afterwards deal with it in the same manner as a natural person and, in the absence of statutory limitation, may change, modify, abandon or cancel *93 it. Atlantic City v. Warren Bros. Co., 226 F. 372 (3rd Cir. 1915), citing 2 Dillon on Municipal Corps. (5th ed.) 1235; Moriarty v. Board of Comm'rs of City of Orange, 89 N.J.L. 385 (Sup. Ct. 1916), affirmed 90 N.J.L. 328; 10 McQuillin on Municipal Corporations, 569, sec. 29:121. Generally, it is held to be competent for a municipality to abandon a contract if it see fit so to do. Tunny v. City of Hastings, 121 Minn. 212, 141 N.W. 168 (Minn. Sup. Ct. 1913); 63 C.J.S., Municipal Corporations, § 1016, p. 607; 38 Am. Jur. 177, sec. 503. Furthermore, a municipality acting through its governing body has power to settle and adjust the claims against it so long as it acts in good faith. DeMuro v. Martini, 1 N.J. 516 (1949); R.S. 40:48-17; Clough v. Verrette, supra.
In the case at bar, the individual defendants were pressing a claim against the City of Newark for return of the $35,000 deposit. The city had parted with nothing. It still held title to the lands in question and, presumably, was still collecting rental therefor for the use of the same as a private parking lot. There is nothing in the proofs indicating fraud or bad faith on the part of the city commissioners in having adopted the resolution for the return of the deposit and to thus settle and dispose of the claim against the city which might well have involved the city in expensive litigation. The city commissioners, so long as they acted in good faith, as I believe they did in the case at bar, were within their rights in deciding to abandon the contract and to settle the controversy by returning the deposit and this court ought not to substitute its judgment for that of the municipal governing body acting in good faith on matters within its jurisdiction. Anderson v. Mayor and Council of Town of Bloomfield, 2 N.J. Super. 605 (Law Div. 1949).
Accordingly, the contention that the resolution was illegal, void and invalid is rejected and the resolution is sustained as a valid exercise of the power vested in the city commissioners.
Seventh: Respecting the cross-claim of the individual defendants in which they seek judgment against the *94 city for the $35,000 deposited with the city, had the city stood on its right to hold the individual defendants to their contract, they would have had no standing by cross-claim or otherwise to a judgment against the city for the return of the deposit. Johnson v. Rivara, 11 N.J. Misc. 677 (Sup. Ct. 1933), affirmed 112 N.J.L. 92 (E. & A. 1934); Katz v. Katz, 134 N.J.L. 303 (Sup. Ct. 1946); Bernstein v. Rosenzweig, 1 N.J. Super. 48 (App. Div. 1948); Earlin v. Mors, 1 N.J. 336 (1949); McEnaney v. Spedick, 13 N.J. Super. 37 (App. Div. 1951). However, the city did not stand on its right to hold the defendants to their contract but by the resolution adopted June 30, 1954 authorized the return of the deposit to the bidders on execution and delivery of a proper release. Under the circumstances, it was competent for the parties to abandon the contract by mutual assent and this in effect is what they did. Tunny v. City of Hastings, supra.
I am of the opinion that the individual defendants are entitled to judgment on their cross-claim against the city, but without interest.
Accordingly, judgment will be entered dismissing the complaint of the plaintiff and granting a judgment in favor of the defendants Benjamin A. Levine and Floyd Liebowitz against the City of Newark for the sum of $35,000, without interest or costs as against the City of Newark.